### Thomas D. Curtis & wife *vs.* Patrick Noonan & wife.

A grant of land with a right to lay a pipe across other land of the grantor lying south of the conveyed premises, sufficient to draw one third of the water from an existing aqueduct to the conveyed premises, does not authorize the grantee or his assigns to take water from the aqueduct at a point above the grantor's land, even with the consent of the owner of the land above.

If the owner of land to which water is brought through an aqueduct conveys a portion of the same, with a right to take water to the conveyed premises by a pipe from the aqueduct on his land, and thereafter orally consents that his grantee may take the water to which he is entitled from the aqueduct at a point above the grantor's land, he cannot withdraw such consent after it has been acted upon; and he will be liable in damages for cutting off a pipe laid by the grantee in pursuance of such consent.

Tort, praying for relief in equity, for cutting off a water-pipe. The case was reserved for the decision of the whole court upon the report of a master in chancery, by which it appeared to be as follows :

Asa Sprague, being the owner of a tract of land in Great Barrington, bounded on the east by a highway, conveyed out of this tract three lots next to the highway, with houses which he had built thereon, to Benjamin F. Gilmore, " together with the privilege of having the lead pipe, which now conducts water from my other land above on to these premises, be and remain as it now is, and also the privilege of going on thereto for the purpose of replacing or repairing the same." Gilmore conveyed, first, to Wood (from whom by mesne conveyances it afterwards came to Alger) the southern lot, " together with a right to lay a pipe to the spring of water near these premises and using one third of said water by paying one third of the expenses of maintaining and fixing said spring ; " secondly, to Van Hoesen (who afterwards conveyed to Wilson) the northern lot, and " also the right and privilege to lay a pipe under ground across my other premises next south of these herein described and above the buildings thereon, sufficient to draw one third of the water from the present aqueduct to these premises, on condition that said Van Hoesen shall hereafter maintain one third of the expenses of said aqueduct ; " and, lastly, to Loomis (who afterwards conveyed to Margaret Noonan, the female defendant) the middle

lot, " also hereby conveying all my right to water from the spring on the premises of said Sprague, together with my right to enter the premises of said Sprague for the purpose of laying or repairing the pipe from said spring."

The spring from which the water comes is an ancient natural spring upon the land retained by Sprague, and would afford plenty of water for the use of the four families claiming rights thereto, except in times of remarkable drought. The main pipe was laid by Sprague before his conveyance to Gilmore from the spring to the lot now owned by Noonan, where the water was discharged into a tub, and thence overflowed into the road The pipes which carry the water to Alger's and Wilson's houses were laid by Alger and Van Hoesen respectively, connecting with the main pipe on Noonan's lot about six feet east of Sprague's boundary line.

Wilson afterwards conveyed to Mary D. Curtis, the female plaintiff, the northern half of his lot, " together with a right to lay a pipe across my land lying south of the conveyed premises, and the right to take and carry in said pipe to the conveyed premises one half of the water to which I am entitled under the deed of said Van Hoesen to use, subject to the conditions in said deed expressed; reference to said deed or the record thereof, and to the deed of Benjamin F. Gilmore to said Van Hoesen or the record thereof, being had, for description of my right to water, one half of which is hereby conveyed." The plaintiffs built a dwelling-house upon the land so conveyed by Wilson; but the water would not flow to it if the connection was made with the main pipe at the same point as the others; and the plaintiffs obtained a license from Mrs. Sarah A. Sprague, the present occupant of Sprague's land, to dig up the soil for the purpose of laying a pipe connecting with the main pipe on that land at a higher level and thence across the corner of Wilson's lot to their house, and paid damages for this injury to the soil; and before making this connection had an interview with the female defendant, who told them that they might attach their pipe where they chose. The orifice through which the water used by the plaintiffs was taken was exceedingly small, and they drew less

water than was granted by Wilson's deed. It was not denied that the condition in that deed as to keeping the aqueduct in repair had been fulfilled. The defendants afterwards cut off the plaintiff's pipe near its intersection with the main pipe, and so prevented the plaintiffs from using the water, and threatened to repeat such acts.

The situation of the pipes is shown by the following plan, which was made part of the case.

*I. Sumner & M. Wilcox,* for the plaintiffs.

*H. L. Dawes,* for the defendants.

GRAY, J. The plaintiffs seek to maintain the right to take water through the pipe laid by them across the lands of Sprague and Wilson upon two grounds: 1st. Under the deed from Wilson; 2d. Under the oral permission of Mrs. Noonan and Mrs. Sprague.

1. The right granted by Wilson to Mrs. Curtis was to lay a pipe across Wilson's land, and to take through it half of the water to which Wilson was entitled under the deeds from Van Hoesen to him and from Gilmore to Van Hoesen, to which Wilson's deed referred for a description of his right to water; and upon referring to the deed from Gilmore that right is shown to be to lay a pipe across the next adjoining lot on the south then owned by Gilmore, and now by Mrs. Noonan. The grant

by Wilson to Mrs. Curtis was thus limited to taking water from the main pipe on the Noonan lot across that lot and Wilson's, and did not authorize water to be taken from the main pipe upon the land of Sprague before it reached the Noonan lot. It therefore becomes necessary to consider the other ground of the plaintiffs' claim.

2. The rules of law by which this must be tested are well settled in this commonwealth. An easement in real estate can be acquired only by deed, or by prescription, which presupposes a deed; but it may be destroyed or extinguished, abandoned or renounced, in whole or in part, by a parol license granted by the owner of the dominant tenement, and executed upon the servient tenement. *Dyer* v. *Sanford,* 9 Met. 402. *Morse* v. *Copeland,* 2 Gray, 304, 305. The pipe laid by the plaintiffs was not through the land of Noonan, but through the land of Sprague. The case finds that the plaintiffs have not interfered with the flow of Mrs. Noonan's share of the water to her house. The utmost interest which she had in the plaintiffs' share of the water was to have it run from Sprague's land through her own to the plaintiffs'. The only right given by her to the plaintiffs was to draw off so much water before it reached her own land. So that Mrs. Noonan granted no easement over her own land, but simply renounced an easement over the land of a third person. The new easement which the plaintiffs sought to acquire, in place of the one which they, with Mrs. Noonan's concurrence, renounced, was to be derived not from her, but from Mrs. Sprague. As the plaintiffs had no deed from Mrs. Sprague, the license from her, though executed and paid for, yet, having been executed on her land, might doubtless have been revoked by her. But the case shows no such revocation, nor any authority from her to the defendants to enter upon her land and cut off the pipe which she had licensed the plaintiffs to lay. So long as the license from Mrs. Sprague to the plaintiffs is unrevoked, their possession under it entitles them to a remedy against mere wrongdoers like these defendants. *Northam* v. *Bowden,* 11 Exch 70.                                          *Decree for the plaintiffs.*