## Ebert v. Mishler.

*Deed—Easement—Passageway—Contract.*

An owner of land conveyed by deed to an adjoining owner a strip of land five feet wide fronting on a street and extending back to an alley at a distance of 120 feet with the provision that the strip should be used as an addition to the width of a street or passageway belonging to the grantee, and not for any other purpose, and that the same should be used as an open thoroughfare at all times. The street thus widened was thereafter used by both owners. Nineteen years after the date of the deed, the grantor's successors in title agreed with the grantee's successor to permit the latter to build over the former's line two feet for a distance of 59 feet. The former was to have the use of the wall on paying one-half of its cost. It was also agreed that the latter should leave open a passageway five feet wide in and through his building for ingress and egress of the other owner. The buildings were erected in accordance with the agreement but were burned down nine years afterwards. In the course of reconstruction the subsequent owner of the buildings attempted to close up the five feet passageway. *Held,* that the agreement did not extinguish the easement created by the prior deed, and that the owner should be enjoined from closing the passage.

Argued Jan. 8, 1912. Appeals, Nos. 244 and 258, Jan. T., 1910, by plaintiff and defendant, from decree of C. P. Blair Co., Equity Docket D. No. 710, on bill in equity in case of John W. Ebert v. Isaac C. Mishler. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction.

SHULL, P. J., specially presiding filed the following opinion:

Plaintiff, under bill filed, seeks to compel defendant to remove a certain fence which obstructs ingress and egress to his building, and to keep open perpetually an alley or way across said defendant's premises to a width of twenty-five feet, extending from 11th Avenue, in the city of Altoona, to an alley in the rear, a distance of 120 feet. And, by Cross-bill filed, the defendant seeks to enjoin the plaintiff Ebert from obstructing, interfering or using in any way, a five foot way in said lot, and prays further that the rights therein, as well as to a party wall, be defined.

### FINDINGS OF FACT.

1. The plaintiff, John W. Ebert, by deed dated 6th Sept., 1888, became the owner in fee simple of the S. W. part of the N. E. half of Lot No. 11, in the City of Altoona, Blair County, Pa., fronting 20 feet on 11th Avenue and extending back 120 feet to 11th Alley;

2. That, at the time of filing the bill, the defendant was the owner in fee of lots Nos. 9 and 10, fronting on said 11th Avenue, 100 and 120 feet in depth, together with and including 5 feet front of Lot No. 11, extending back to 11th Alley, subject, however, to a reservation appearing in Finding No. 3;

3. Adolphus Roush, the predecessor in title of the lands owned by plaintiff, together with the additional 5 feet, or a total of 25 feet, by deed dated 21st August, 1869, conveyed to the Altoona Hall and Market Company, then owner of Lots Nos. 9 and 10, five feet, fronting on 11th Avenue, and extending back said width to 11th Alley, a distance of 120 feet, which said deed contains a reservation in haec verba: "It is, however, agreed that the said described piece of ground shall be used as an addition to the street or alley of the Altoona Market Company, and not for any other purpose, and that the same shall be used as an open thoroughfare

at all times, between Virginia Street and the Alley Northwest." Said Virginia Street being hereafter designated as 11th Avenue;

4. That, at the time of the conveyance of the said five feet mentioned in the preceding paragraph or finding, there was an open way upon Lot No. 10, about 20 feet in width, through which the respective owners of Lots No. 11 and Nos. 9 and 10, had access by entrance at the sides to the buildings erected on the said several lots. Said alley or way being used by both parties as a means of ingress and egress and for loading and unloading articles of merchandise, etc., at the side entrance of their respective buildings, which said use continued to the date of the agreement, hereafter referred to in the Fifth Finding of Fact;

5. On the 7th day of September, 1888, an article of agreement was made between Wm. W. Roush, defendant's predecessor in title, and John W. Ebert, the present plaintiff, wherein it was agreed, inter alia, that said Roush, who was about to commence the erection of a brick building upon his said lot," may build his wall a distance of two feet over the line of said Ebert, that is, so as to occupy two feet in width of said Ebert's ground and extending back from Eleventh Avenue back a distance of about 59 feet, and that the remaining portion of said wall shall be built 18 inches beyond the said Ebert side of the line dividing said properties, extending 61 feet from the wall above mentioned, back to the Alley. It is further agreed that the said J. W. Ebert, his heirs and assigns, shall have the right and privilege at any time of joining to the said wall, and building into the same along the whole length or any part of the length thereof, any building he may desire or have occasion to erect on his said lot, and to use and enjoy the said wall or any part thereof, as a wall of the building or buildings so to be erected, and to sink the joists of such building or buildings into the wall aforesaid, provided, however, and on the express condition,

that before proceeding to join any building to the said wall, the said Ebert shall pay to the said Roush the one-half part of the cost of the said wall, or so much thereof as shall be joined or used as aforesaid.

It is further agreed that the said Roush shall provide and have, and leave open at all times, a passage way five (5) feet in width, in and through his said building, so as to give said Ebert equal privileges and passage way to and from each story of his said Ebert's building, and extending back a distance of about fifty-seven (57) feet from Eleventh Avenue, to be at all times kept open for the use of both parties to this agreement and any occupant of the premises of either of the parties to this agreement or their assigns. In cause either party should make sale of their property, the intention of this agreement is that this hall-way shall remain open perpetually for the equal use of both properties, unless the owners mutually agree to make a change;

6. Pursuant to this agreement, said Roush constructed a brick wall on the lines designated under said agreement of 7th September, 1888, that is to say, upon the two feet of Ebert's land back a distance of 57 feet, and for the remaining distance upon the 18 inches of his own land, to which wall the plaintiff attached his building, having made compensation in accordance with the terms of the said agreement. And said Roush, under the provisions of said agreement, erected upon the said five foot passageway, a stairway, leading to and as a means of ingress and egress to his own building, which was erected upon and over said five foot alley-way; and also for the use of plaintiff, to reach the second and third story of his said building;

7. That said hall-way and stairs were used by both parties and their several and respective tenants and occupants, from the time of its construction in 1888 or 1889 to the 14th day of June, 1907, when the entire structure or building on the premises of defendant's

predecessor in title, together with a portion of plaintiff's building, was destroyed by accidental fire;

8. That subsequent to said fire, plaintiff- removed his share or half of the party wall, using the material thereof and re-erected his building wholly upon his own lands, the front portion extending back fifty-seven feet, being within the two feet allowed originally for said party wall, and the remaining portion was built up to the line of defendant's lot;

9. The defendant erected a high board fence, enclosing entirely his lot, including the five feet designated as an alley, passage or hallway.

### DISCUSSION.

The acts of the parties fairly disclose the intention of the parties under the reservation of the deed of 1869, and the interpretation which was placed by them upon the agreement entered into on the 7th day of September, 1888. Both parties and their tenants enjoyed the several rights and privileges thereunder for a period of almost twenty years. There seems to have been no conflict of rights until the buildings were razed by a fire on the 14th June, 1907. After this fire, plaintiff called upon defendant's agent and manager, making inquiry relative to rebuilding the premises, but, receiving no definite reply, he erected a three story building upon his own land, and served a notice upon defendant not to enclose the 25 feet used by the parties under the agreement of 1869. The plaintiff, however, disregarding said notice and relying upon his rights under the agreement as changed and modified by the agreement of 1888, enclosed his entire premises with a high board fence.

Plaintiff now insists under his bill filed that the parties are restored to their original rights as they existed under the agreement of 1869, while defendant urges that the easement created under the agreement of 1869 was extinguished by the subsequent agreement

of 1888, and that the fire having effaced the party wall,
the latter agreement has lost its force and is now void
and of no effect. We cannot subscribe wholly to either
of these contentions. The purpose of the parties under
the agreements clearly was to economize space where
lands were so valuable as in that portion of the city,
each making contribution or surrender of rights and
privileges in consideration of advantages to be mutually
derived. This spirit of the agreement must be kept
constantly in view in determining the rights of the
parties, because, in the covenant, it was stipulated that
the alley or passageway to the extent of five feet in
width and fifty-seven feet in length, extending from
11th Avenue, was to "remain open perpetually, for the
equal use of both properties, unless the owners mu-
tually agree to make a change." There is no evidence
of any mutual agreement to make any change, and no
act has been shown by the evidence to destroy or nullify
its terms. While it may be conceded that the agree-
ment of 1888 was substituted for that of 1869, it did
not absolutely extinguish the easement, except in so
far as it was in direct conflict therewith. The reserva-
tion of the right of way necessary for ingress and
egress to the building on Lot No. 11, was kept in view
with an eye single to the right of such access. The
plaintiff's contention that by deed of 21st August,
1869, conveying the 5 foot alleyway with the limitation
thereon, a servitude was imposed upon the other 20
feet of open roadway, fails of its purpose, when it ap-
pears that the grantee did not have title to said 20
feet until 15th October, 1869. But, a more potent
reason is found in the fact that no grant is shown to
have been made by the owner of that fee, and the fact
that both parties mutually assented to the "five feet
which has been heretofore used as a passageway."
Even if it be conceded that the grant was to "be used
as an addition to the street or alley," the owner of the
easement may abandon it to relieve the servient estate

of the encumbrance. 10 Am. & Eng. Enc. Law, (2nd Ed.) 434. If the owner of a dominant estate authorizes the owner of a servient estate to do upon the servient estate that which prevents the dominant estate from any longer enjoying the easement, the effect will be to extinguish it. Washburn on Easements & Servitudes, (4th Ed.) 726. While it clearly appears that the ancient way to the market house upon Lot Nos. 9 and 10, was to be abandoned as absolutely useless, and unnecessary to both the premises under the new conditions, and the rear end of the 5 feet passageway, had been rendered valueless, this in no way affected the 57 feet in the front, so essential to both premises for ingress and egress, which had been substituted and used for a long period by both parties. This was essential under the changed conditions for both parties, as the alimentary canal to the human body, or the door to the fire box in the locomotive. It seems clear that for the mutual advanages of each to the other, all rights, whether of servient or dominant tenement, in fee or by easement, was abrogated by the agreement of 1888, except as to the passageway 5x57 feet, which was to be and remain open perpetually for the use of both parties, unless the said parties mutually agree to a change. Neither party under the agreement, which provided only for a passageway or hallway, could call upon the other to erect a stairway, but the plaintiff has the undoubted right to the use of said plot or alleyway 5x57 feet as an entrance to his building, and may construct such means of access to his second and third story as he may deem expedient, but may not call upon defendant for contribution. The defendant is prohibited from interference with the use of the alleyway, for such was the servitude impressed upon it by the parties under the deed, as modified by the agreement. Should the defendant rebuild or erect a new structure upon his lot, covering to the line prior to 1869, the alley or passageway of 57 feet may be utilized for a

stairway and entrance, provided he constructs such stairway as will afford convenient access to the plaintiff's building now erected upon his premises, restoring thereby to the plaintiff his full rights under the spirit, true meaning and intention of the parties to the agreement of 1888.

There was no manifest intention of the plaintiff to abandon his right or easement in that portion of the passageway, as a means of access to his said premises, as argued under the authority of Stokoe v. Singers, 8 Ellis & Bl. 31. Conceding that he re-erected his building without regard to a present side entrance, such act would not show an abandonment in face of the notice wherein he asserts a right not only to that which he is actually entitled, but also to a greater right or privilege. The less would be included in the greater. The claim to the full 25 feet of the original alley or passageway from street to alley includes the right in the smaller or restricted entrance.

We come then to the rights of the parties under the agreement and the laws of the Commonwealth relative to the division, or what is here referred to as the party wall. A party wall is a division wall erected between two adjoining estates belonging to different persons for use of both estates, or as defined by Washburn on Easements & Servitudes, (4th Ed.) 611, "a wall built at common expense and in which each have acquired a common right therein." The wall in the case at bar was built on the lands of both parties, the front end or portion of the wall, on lands of plaintiff a distance of 59 feet, and the rear end of 61 feet upon lands of defendant's predecessor in title, each making contribution and each together using the same in common until the buildings were destroyed by fire. What then is the status of the parties. We are cited to Section IV of the Act of April 10, 1849, P. L. 600, which provides that "In the conveyance of houses or buildings, the rights to and compensation for the party wall built therewith,

shall be taken to have passed to the purchaser, unless otherwise expressed, and the owner of the house for the time being shall have all the remedies in respect to such party wall as he might have in relation to the house to which it is attached." This Act has been held to apply to any wall made such by statute, prescription or agreement, (Voight v. Wallace, 179 Pa. 520), and the purpose of the Act as stated in said cited case "was intended to prevent the inconvenience and injustice resulting from the title to the wall being in one person and the right to compensation outstanding and a secret claim in the hands of another." In other words, the Act was to prevent a condition such as arose in Dannaker v. Riley, 14 Pa. 435, where the right of the first builder to compensation was considered a personal right and did not pass with the land to the purchaser. In Knight v. Beenken, 30 Pa. 372, it was held that the right or interest should pass by the conveyance and such interest should be in law what it was in fact, "an interest in the realty and not a mere personal right."

But, it is clear that this Act and the authorities cited relate to a party wall, in its technical sense, under the statutes, and not to the ordinary division or partition wall created for convenience between adjoining owners of property. Such rights, which are purely statutory, do not exist at common law. List v. Hornbrook, 2 W. Va. 340. A division wall may, however, be a party wall, not only by statute, but also by agreement. Ritter v. Sieger, 105 Pa. 400. We must then look to the agreement of 1888 between the parties and determine whether or not a party wall exists by contract, and what may be required of each thereunder. It is herein provided that whereas Roush is about to commence the erection of a brick building, and that he may build his wall a distance of two feet over the line of said Ebert back a distance of 59 feet, and the remaining portion of the said wall shall be built eighteen

inches beyond the said Ebert side of the dividing line, a distance of 61 feet; and that Ebert shall, after compensation, sink the joist of his said building into said wall. But, it will appear under the agreement that while provision is made for the perpetual maintenance of the hallway, no such agreement is made in reference to the wall; nor is any provision made for its repair or re-construction in the event such repairs or rebuilding may become necessary. No right has run by prescription, and, in the absence of such contract, it is to be assumed that none was intended by the parties, for only that which is expressed or fairly implied under the agreement can prevail. The easement of support by means of a common party wall, which belongs to adjoining buildings cease with the state of things which created it, and, when the wall is accidentally destroyed, or is so much decayed as to require a rebuilding from the foundation, neither may call upon the other for its restoration, unless it was so agreed at the time of its erection. Bonney v. Greenwood, 96 Me. 335 (52 Atl. Repr. 786). And, where one owning an easement in a wall, which forms a side of his building, after the destruction of the wall and building, erects a new building on a different foundation, he, thereby, abandons and extinguishes the easement. Duncan v. Rodecker, 90 Wis. 1 (62 N. W. Repr. 533).

The buildings were destroyed by a fire, without cause by either party, and, where houses having a party wall are accidentally destroyed by fire, leaving the wall standing, the easement in the wall ceases, and either owner may dispose as he pleases of the part of his ground." Hoffman v. Kuhn, 57 Miss. 746. There is no implied obligation which will enable either to maintain an action against the other for neglect or refusal to repair or reconstruct. Pierce v. Dyer, 109 Mass. 374. "When the wall has been destroyed by the elements, there being no agreement to build a second wall, neither party is under obligation to join the other

in doing so, and the law would imply no such obligations." Washburn on Easements & Servitudes, (4th Ed.) 614; Shirley v. Crabb, 37 N. E. Repr. 130. These authorities would seem to indicate that the division or partition wall is wholly eliminated from the controversy, as neither the agreement of 1888 provides for reconstruction or contribution therefor, nor is there any evidence tending to show since the destruction of the buildings that either party obligated himself to a reconstruction, or for contribution in the event of a rebuilding by the other party. The plaintiff, having rebuilt wholly upon his own land, the defendant must, if he desires to rebuild, likewise erect wholly upon his land within the lines as shown between the properties, prior to the deed of 1869.

### CONCLUSIONS OF LAW.

1. That the second or subsequent agreement of 7th September, 1888, did not annul or extinguish the grant in its entirety contained in the deed of 1869, but so modified, reformed and changed the same, to conform to the new conditions, restricting the area or size of the passageway for ingress and egress of both parties and their several occupants of the respective buildings;

2. That defendant has no right or authority to enclose or maintain closed that portion of the plot conveyed by deed of date 21st August, 1869, which fronts on Eleventh Avenue five feet, and extends back a distance of fifty-seven feet, reserved for an alley, passageway or hallway. Nor has the plaintiff any easement rights to or interest in any other portion of defendant's lands;

3. That, by agreement of 7th September, 1888, for considerations therein named, the rights of the parties were merged, and, by the fire of 14th June, 1907, the division wall was obliterated, either party then having the right to decline to build, or, rebuilding a division wall, may build upon his own lands without reference

to the former rights in the division wall erected under the said agreement of 1888.

*Error assigned* was decree awarding injunction.

*R. A. Henderson,* for Isaac C. Mishler, appellant.

*Wm. S. Hammond* and *O. H. Hewitt,* for John W. Ebert, appellee.

PER CURIAM, February 5, 1912:

These appeals are from a decree entered on bill and cross-bill defining the rights of adjoining owners of land to an easement. They give rise to many questions of interest that have been elaborately and ably argued, but the crucial question in the case is whether the agreement of 1888 extinguished the easement created by deed in 1869. We concur in the conclusion reached by the learned judge of the Common Pleas that it did not and that its only effect was to define and restrict the use of the passage way. Whether under a strict construction of the deed, the easement created by it was personal to the grantor and limited to his life is of slight importance, in view of the construction placed upon it by the owners of the dominant and servient tenements. For a period of nearly forty years they construed the covenant as running with the land, and with this understanding of their rights, negotiations were entered into for their mutual advantage and money expended and buildings erected. It is now too late to call it into question.

The decree is affirmed.