PHILIP J. STUECK ET AL. vs. THE G. C. MURPHY
COMPANY.

First Judicial District, Hartford, October Term, 1927.

WHEELER, C. J., MALTBIE, HINMAN, BANKS and JENNINGS, Js.

The ordinary form of judgment in an action for legal or equitable relief is not appropriate to an action for a declaratory judgment.

In an action for a declaratory judgment this court will determine the rights of the parties, as prayed for, upon the facts found, and not as limited by the issues joined or by the claims of counsel.

The mere expenditure of money in the execution of a parol license, otherwise revocable, does not make it irrevocable.

An easement in real estate may be acquired by deed or by prescription and extinguished, in whole or in part, by written release or by abandonment.

The intent of the owner of the dominant estate to abandon his easement, must be clearly indicated by the surrounding circumstances. A grant by him of a parol license to destroy or extinguish the easement in whole or in part is, when executed by the servient owner, ordinarily inconsistent with any other intent.

In 1922 the P. brothers leased to the E. Co. the first floor of a three-story building, on the north wall of which, adjoining another building owned by N., was a stairway which afforded the only means of access directly from the street to the second and third floors of both buildings, and which N. had a right to use for all proper purposes as appurtenant to his premises. Shortly after the commencement of its lease, the E. Co., with the approval of the P. brothers, prepared plans for the alteration of its store, which involved the construction of a show window at the foot of the stairway and the substitution of another means of access leading from the lower landing by a turn into the store entrance and thence, between two show windows, to the street. When the proposed changes were explained to N. he refused to give his consent in writing, but then and thereafter expressed orally his approval and satisfaction and, during the progress of the work, raised no objection. Subsequently the E. Co. assigned its lease to the defendant and N. sold his premises to the plaintiffs who brought the present action for a declaratory judgment as to the rights of the parties with respect to the stairway. *Held:*

1. That the question whether the stairway was included in the lease was immaterial, since, throughout the entire transaction,

the E. Co. had acted with the sanction, approval and authority of the P. brothers.

2. That by his words and conduct, N. had given a parol license for the partial extinquishment of his easement for the term of the lease, conditioned upon the agreement of the E. Co. to substitute another means of access; and that the execution of this license at considerable expense by the E. Co., accompanied by the performance of its agreement, made with the approval of the P. brothers, worked an abandonment, *pro tanto*, of the original right of passage.

3. That such an abandonment does not rest upon the doctrine of equitable estoppel, except in so far as the circumstances pointing to an estoppel may furnish decisive proof of the intent to abandon.

4. That the plaintiffs, having been charged with notice from the land records as to the original course of the easement, and having of necessity observed the substantial change therein at the time of their purchase from N., were put upon inquiry concerning the equities resulting from the agreement between N. and the E. Co. and, therefore, were bound by them.

Argued October 4th, 1927—decided June 5th, 1928.

ACTION for a declaratory judgment determining the privilege of the defendant to maintain a show case at the foot of a stairway over which the plaintiffs had a right of way, brought to the Superior Court in Middlesex County and tried to the court, *Simpson, J.;* judgment for the defendant, and appeal by the plaintiffs. *No error except in form of judgment.*

The essential facts upon which the judgment appealed from is based are these: Prior to October, 1922, Noxon owned and occupied as a store the premises adjoining those owned and occupied by R. S. and L. R. Pease. Each of these premises consisted of a three-story building used for commercial purposes. On the northerly side of the Pease premises was a wall and north of this a stairway at the foot of which was a landing open to the street, which was reached by two stone steps. There was no access from the ground floor of the Pease premises to the stairway except from the street. From this landing flights of stairs ran to

the second and third floors at each of which was a landing, and from these there was access to the respective floors of both buildings. There was no means of access to the upper floors of Noxon's building direct from the street. Noxon's premises had as appurtenant to them "a right to use the stairway adjoining said wall for all proper purposes," and further, "that the right to use the stairway shall not be exercised in such manner as to interfere with the occupants of the adjoining store." There was a stairway from the store of Noxon to the second and third floors, and during the latter ten years he had used the inside stairs largely, and the stairway on the adjoining property only occasionally. On October 11th, 1922, R. S. and L. R. Pease leased the ground floor and basement of the building owned by them to The J. R. Evans Company for a term of years, its lease giving it the right to make such alterations in the leased premises as it desired. Thereafter Hoyt, the agent of the Evans Company, prepared plans for altering the leased premises, included in which was the construction of a new front for the ground floor and the building of a show window at the entrance of the stairway and the turning of the stairway from its lower landing down steps into the entrance to the store of the Evans Company and thence between the rear of the new show window and another show window to the street. Hoyt showed the plan to R. S. Pease and L. R. Pease; they consented and approved of the alterations, but advised Hoyt that Noxon had the right to use the stairway. Hoyt next interviewed Noxon, explained to him, in detail, the plans and he consented to the making of these alterations of the store front and the substituted ingress and egress from the stairway landing, provided that the Evans Company would not hold him responsible for the breakage of the show windows in carrying his goods from the street to the

stairway, and this the Evans Company agreed to. Subsequently Hoyt requested Noxon to sign an agreement of consent to these alterations; he refused, but neither then, nor at any time, objected to their being made, although he was constantly at his store, next door, while these were progressing. Upon two occasions he expressed to R. S. Pease and once to L. R. Pease that he was satisfied that the alterations should be made as planned. At the time Noxon gave his consent he knew that his way of ingress and egress to or from the stairway would be modified by the substituted way as on the plan, and to that extent intended to waive and abandon *pro tanto* whatever right he had to use the ingress and egress from the street to the stairway as formerly existing, at least so long as the lease of the Evans Company continued. That Company completed these alterations; the show window at the foot of the stairway cost $300, and was an integral part of the new store front, which cost upward of $1500. The front is permanent in character and could not now be removed or materially altered without considerable expense and the changing of the entire store front of the premises leased by the Evans Company. Prior to the institution of this action Noxon conveyed his premises to the plaintiffs, and the Evans Company assigned its lease to the defendant, which was in possession when this action was begun.

*Bertrand E. Spencer*, for the appellants (plaintiffs).

*Ernest A. Inglis*, for the appellee (defendant).

WHEELER, C. J. The action is one for a declaratory judgment as to the respective rights of the parties to the steps and a part of the landing of a stairway furnishing ingress and egress from the street to the stair-

way and thence to the second and. third floors of the
adjoining buildings owned at present by the plaintiffs
and R. S. and L. R. Pease, and also as to the right of
the plaintiffs to a substituted way from this stairway
landing through the entrance to defendant's store to
the street.

The judgment is not appropriate to an action seek-
ing a declaratory judgment, but in form is such as
would be appropriate if the action were one by the
plaintiffs against the defendant seeking legal or equi-
table relief; however, in effect it determines that the
defendant is entitled, as against the plaintiffs, to main-
tain the show window described in the complaint in
such manner as to cut off access to Main Street from
the stairway substantially as shown on plaintiff's Ex-
hibit I, and that the plaintiffs, as against the defend-
ant, have a right to use the stairway for all proper
purposes as a way of ingress and egress to and from
the street, substantially as indicated on this exhibit.
The judgment should also specify the duration of the
parol license and the substituted easement of way as
limited to the term of the lease to the Evans Company
as found by the trial court.

The lease to the Evans Company is not made a part
of the record. It is difficult to support the finding that,
in leasing the ground floor of their building to the
Evans Company, R. S. and L. R. Pease included the
entrance from the street and the landing furnishing
access to the stairway, since the entrance from the
street and the stairway were not connected with the
store or basement leased by the Evans Company, but
separated by a solid wall, and this Company had no
occasion to use this entrance or stairway and so far as
appears never did use them and since the owners of the
building retained the upper floors of their building,
access to which could only be had by the entrance and

stairway. Whatever the proper construction of this lease in this particular, it would not affect the conclusion we reach upon the facts found. The rights of these parties are to be determined, as prayed for, upon the facts found. In an action for a declaratory judgment, we are not limited by issues joined, or by the claims of counsel. The finding is that Noxon orally agreed with the Evans Company upon the closing of the entrance to this stairway by a show window and the substitution of a means of ingress and egress to and from the stairway through the entrance to the Evans Company store between the new show window and another show window to the street in place of that which had existed since 1827. This was the modification by a parol license of an easement of way by the substitution of another easement of way. The finding is explicit that while the Evans Company, so far as appears, had no written authority to make this agreement, it had the express oral sanction of its landlords to make it. It is also explicit that Noxon thoroughly understood what he was agreeing to, and, further, that he saw daily the alterations being made and at no time objected to them. It also is explicit that he had several interviews with the landlords of the Evans Company and to them expressed his satisfaction with the making of the alterations as planned. In accordance with this agreement and with the full knowledge of Noxon these alterations were begun and completed, without objection from him. The parol licenses thereupon became executed.

The case is not the mere giving of a parol license and its execution by the expenditure of money. In and of itself that would not make a license, otherwise revocable, irrevocable. It is the temporary modification of an easement by grant by a parol license upon the consideration of the giving of a parol license for a

substituted easement based upon an oral agreement
between the owner of the dominant estate and the
tenant of the servient estate acting with full authority
from the owner of the servient estate. If the agree-
ment as made were within the statute of frauds, the
tenant of the servient estate has fully performed its
part of the agreement and with the authority of its
landlords, the owners of the servient estate, and thus
taken the agreement out of the operation of the statute.
*Haussman* v. *Burnham,* 59 Conn. 117, 133, 22 Atl.
1065; *Hendrick* v. *Lowe,* 85 Conn. 635, 638, 84 Atl. 89.
An easement in real estate can be acquired by deed
or by prescription. It may be extinguished in whole
or part by a written release or by an abandonment of
the easement in whole or part, by the owner of the
dominant estate. Whether there has been an abandon-
ment depends upon whether the surrounding circum-
stances show this to have been the intention of the
owner of the dominant estate. *American Brass Co.* v.
*Serra,* 104 Conn. 139, 149, 132 Atl. 565; *Schroeder* v.
*Taylor,* 104 Conn. 596, 604, 134 Atl. 63; *New York,*
*N. H. & H. R. Co.* v. *Cella,* 86 Conn. 275, 279, 85 Atl.
521. The proof of the abandonment must clearly indi-
cate that it was the intention of the owner of the
dominant estate to abandon the easement. The grant
by the owner of the dominant estate of a parol license
to destroy or extinguish an easement in whole or part
may effectuate that purpose when the license has been
executed by the owner of the servient estate, for these
acts are ordinarily inconsistent with any other inten-
tion than that of the abandonment of the easement.
*Curtis* v. *Noonan,* 92 Mass. (10 Allen) 406, 409; *Bos-*
*ton & Providence Railroad Corporation* v. *Doherty,*
154 Mass. 314, 317, 28 N. E. 277. The abandonment
in law of an easement is the equivalent of the release
of the easement. The grant of the license may be by

Stueck *v.* Murphy Co.

an express written or oral agreement, or it may be established by the circumstances when they clearly indicate the making of the oral agreement.

The trial court has found that Noxon, by consenting to these alterations, intended to waive and abandon *pro tanto* his right of ingress and egress from the street to the stairway landing during the term of the lease to the Evans Company. This intention is found, as it might well have been, in the express consent of Noxon to the making of these alterations which involved the temporary extinguishment of that part of the easement of the passageway from the landing to the street. The plaintiffs concede that if the parol license had been granted by Noxon to the owners of the servient estate, R. S. and L. R. Pease, and had been executed by them, it would constitute clear evidence of an act of abandonment, but they contend that the Evans Company was without authority to act and that a parol license by Noxon to it was revocable at any time. The claim is predicated upon the principle that an abandonment of an easement can only take place between the fee owners. It overlooks the facts found and relies upon a principle which we do not find to be an accepted principle of the law. The Evans Company first prepared a plan of the proposed alterations, secured from its landlords their verbal consent and approval to these, and received from them the advice that Noxon had the right of ingress and egress from the street. Thereafter Noxon, with full knowledge, consented to the making of the alterations in accordance with the plan. Both Noxon and Pease and Pease were present while the work was in progress, and Noxon expressed to them his satisfaction with the alterations as planned so long as the entrance to the stairway was not completely blocked up. The landlords thus verbally approved of the alterations and authorized their tenant to secure

the consent of Noxon to them, and saw them being made in accordance with their approval and by their consent. Under these circumstances the making of these alterations by the Evans Company was done by the authority of its landlords, and the parol license granted their tenant by Noxon was as effective as it would have been if granted directly to them. It is immaterial whether the Evans Company was in fact lessee of the stairway; in what it did it had the express sanction of its landlords. But the parol license of Noxon to temporarily close up this stairway, supplemented by the execution of the license, was only a part of the arrangement between Noxon and the Evans Company. Noxon's acquiescence in the temporary abandonment of his right to the use of a part of the stairway entrance was given upon the consideration that the Evans Company should give him an easement of ingress and egress to and from the stairway to the street. This was a definite agreement for the temporary extinguishment of a part of Noxon's easement in consideration of the giving to him of a substituted passageway. Upon the making of the agreement the Evans Company closed the existing passageway to the street, including a part of the stairway landing, and opened a passageway from the landing through the wall between its store and the passageway and erected steps from this landing to the store floor, thus providing, as it had agreed, a way to the street between the show windows at the entrance to its store. Here we find an extinguishment, temporarily, of a part of an easement upon the substitution of an easement taking its place for a like term.

It is established law that an easement may be extinguished or modified by a parol agreement made between the owners of the dominant and servient estates when the agreement has been executed by the

servient estate. The agreement for a parol license, coupled with its execution, furnished satisfactory evidence that Noxon intended to extinguish temporarily a part of this easement, when the consideration for the license was the grant of a substituted easement which was likewise executed. The finding does not state whether Noxon used this substituted easement during the three years prior to the sale to the plaintiffs, but the fact that he had, during this period, the right to use it, further strengthens this conclusion of Noxon's intention. That the Evans Company would have made these alterations of a permanent character and at a considerable expense upon a license which was revocable at any time would seem unlikely and they furnish strong inference that its intention was to secure a higher interest than a revocable license. The hardship upon the defendant, if this should be held to be a revocable license, would also tend to negative that claim, and substantiate that of the extinguishment of the easement. This rule has been asserted in a number of cases in Massachusetts. In *Boston & Providence Railroad Corporation* v. *Doherty, supra,* at page 317, it is stated: "It is a well-established rule of law that an easement may be extinguished, renounced, or modified by a parol license granted by the owners of the dominant tenement, and executed by the owner of the servient tenement. . . . One cannot acquire an interest in the land of another by executing a parol license from the owner to occupy or use it, for such a license is revocable. But if the license is to do that upon the licensee's own land which prevents the further enjoyment by the licensor of an easement in the land, such a license, when executed, is irrevocable, and the effect of it is to extinguish the easement." Chief Justice Shaw summarizes the law in these terms: "It may well be maintained, on the authorities, that the owner of a

dominant tenement may make such changes in the use and condition of his own estate as, in fact, to renounce the easement itself; and this may be relied on by the owner of the servient tenement as evidence of abandonment. So, if the owner of the dominant grants a license to the owner of the servient tenement, to erect a wall which necessarily obstructs the enjoyment of the easement, and it is erected accordingly, it may amount to proof of an abandonment of the easement. It is not a release, because it is by parol. .But it results from the consideration that a license, when executed, is not revocable; and if the obstruction be permanent in its nature, it does, *de facto,* terminate the enjoyment of the easement. But the license is for the specific act only; and if, when executed, it is of such a nature as, *de facto,* to destroy the easement, but is only temporary in its nature or limited in its terms, then, as the easement is not released, when the obstruction erected in pursuance of such specific license is removed, the owner of the servient tenement cannot erect another obstruction of the same, or of a different kind, without a new license." *Dyer* v. *Sanford,* 50 Mass. (9 Metc.) 395, 401, 402; *Morse* v. *Copeland,* 68 Mass. (2 Gray) 302; *Curtis* v. *Noonan,* 92 Mass. (10 Allen) 406, 409; *Dunn* v. *Youmans,* 224 Ill. 34, 38, 79 N. E. 321.

The case before us is the giving of a parol license of an extinguishment in part of an easement executed by the holder of the servient estate at a very considerable expense, and the complete execution of its agreement to furnish in its place a substituted easement. The license was conditional upon the furnishing of the substituted easement of passage. Upon this point the law is not in dispute. "If the owner of an easement of way verbally agrees that the owner of the servient estate may erect thereon an obstruction of a permanent character and substitute another way, this agree-

ment when executed extinguishes the right to the ease-
ment to the extent of the obstruction." *Davidson* v.
*Kretz,* 127 Minn. 313. 314, 149 N. W. 652.  In *Boston
& Providence Railroad Corporation* v. *Doherty, supra,*
we find a similar parol license of extinguishment of an
easement of passage upon condition that a substituted
easement of passage would be furnished.  The court,
at page 318, held: "In the present case, the defendant
licensed the plaintiff to obstruct and cut off his way
on condition that it would provide him another desig-
nated way as a substitute therefor.  He must have ex-
pected that the execution of the license and the per-
formance of the condition would deprive him of his
old way and leave him with a new one.  His knowledge
of the facts put in evidence, against his objection,
shows that he must have understood that he could not
longer use the old way after his license was executed.
His license was conditional, and his rights were pro-
tected by the condition.  The plaintiff performed the
condition, and in execution of the license made the
necessary changes and improvements on its premises.
. . . We are of opinion that the performance of the
condition, and the execution of the license, worked an
extinguishment of the defendant's easement."  See
also *Pope* v. *Devereaux,* 71 Mass. (5 Gray) 409, 412;
*Fitzpatrick* v. *Boston & Maine Railroad,* 84 Me. 33,
24 Atl. 432; *Miller* v. *Southard,* 38 S. D. 477, 484,
162 N. W. 146; *Ebert* v. *Mishler,* 234 Pa. St. 609, 83
Atl. 596.

The rule holds that if the extinguishment of the
easement is permanent the abandonment may be found
to be permanent, but if the extinguishment is tem-
porary the abandonment may be found for the period
of the temporary extinguishment and when this period
is ended the easement which has merely been sus-
pended for the period will be fully restored.  In *Vogler*

v. *Geiss*, 51 Md. 407, 410, 411, the court held: "But if
the party be authorized to raise the obstructions com-
plained of by mere parol license, and such license be
executed before revocation, and the obstructions be
only temporary in duration or partial in effect, the
easement is only suspended or modified for the time
of the duration of the obstructions raised in pursuance
of such license; and the license being only for a specific
act, and being, except to the extent that it has been
actually executed, countermandable, the licensee can-
not erect another obstruction of the same, or of a dif-
ferent kind, without a new license; and consequently,
such temporary or partial obstructions do not destroy
or work an extinguishment of the right. In such case,
after the removal of the obstructions, the right to use
the easement as formerly is fully restored." See also
*Dyer* v. *Sanford*, 50 Mass. (9 Metc.) 395, 402.

Plaintiffs insist that *Volger* v. *Geiss, supra,* decided
that if the easement owner consents to the obstruction
of his easement temporarily or permanently by others,
who incur expense on the strength of the consent, the
owner thereafter cannot withdraw or restrict this con-
sent, and that it based this doctrine upon equitable
estoppel. We do not so understand this decision. It
will be found, on page 410, that the opinion is in exact
accord with the theory of the cases we cite. The opin-
ion later brings the case also under the doctrine of
equitable estoppel. We think the better doctrine to
be, that if the circumstances point to an equitable
estoppel they may furnish decisive proof of an inten-
tion to abandon or extinguish the easement in whole
or part, but that if there be no intention to abandon
there is no extinguishment or suspension of the ease-
ment. The circumstances pointing to equitable estop-
pel should be considered for the purpose solely of de-

Stueck *v.* Murphy Co.

termining whether an easement has been extinguished in whole or part.

Plaintiffs urge that the finding does not definitely set forth an agreement for a substituted passageway, or specify its duration. We have already expressed our view that the finding does set forth an agreement for an easement whose duration is that of the Evans Company lease. It specifies, among the subordinate facts, that Noxon intended to abandon *pro tanto* whatever right he had to use the stairway at least so long as the Evans Company and persons claiming under it continued to occupy the premises. It was a fair inference from all the subordinate facts whether the parties intended the duration of the oral license to extend for the term of the Evans Company lease, or whether they intended all of these alterations to be made under a revocable parol license. The trial court has drawn the inference which more fairly corresponds with the real intention of the parties, than would the inference that the license was revocable at the pleasure of Noxon. We are unwilling upon this record to disturb the finding in this particular.

Finally, the plaintiffs make the point that, whatever the agreement between Noxon and the Evans Company, the present plaintiffs did not have notice of it and cannot be bound by it. When the plaintiffs purchased from Noxon they took subject to any equities of which they had actual or implied notice. *New York, N. H. & H. R. Co.* v. *Russell,* 83 Conn. 581, 78 Atl. 324. When the plaintiffs purchased, the alterations and the changes in the passageway to the street had been made. They must be charged from the land records with notice of the course of this easement of passageway. Knowing the course, noting the most unusual change of the way, the plaintiffs were put upon inquiry as to the equities existing between Noxon and the Evans

Company or its landlords, as a result of which the original passageway had become blocked by a show window and Noxon had secured a passageway through the Evans Company store to the street.

The judgment may be corrected in accordance with this opinion to state the duration of these executed licenses and to correspond with the ordinary form of a declaratory judgment.

There is no error except in the form of the judgment.

In this opinion the other judges concurred.