JOHN KENNETH BYARD *vs.* EMMA H. HOELSCHER ET ALS.

Third Judicial District, Bridgeport, April Term, 1930.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

Argued April 10th—decided July 31st, 1930.

*Warren F. Cressy*, for the appellant (plaintiff).

*Minerva M. Davis*, with whom was *Leo Davis*, for the appellant (defendant Emma H. Hoelscher).

MALTBIE, J. This controversy concerns a tract of land of about three acres, which both the plaintiff and the defendants claim, and the right to the use of a certain driftway in connection with it. The trial court held that the land was the property of the plaintiff but that there had been an abandonment of the driftway. The plaintiff and one defendant have appealed, the defendant claiming error in the decision in respect to the ownership of the land, and the plaintiff claiming error with reference to the finding of an abandonment of the driftway.

The trial court in its finding has traced the title of the plaintiff from the estate of Stephen Hoyt the elder, who died about 1828, has found that the various conveyances and other instruments in the devolution of the title included the lot in question, and also certain other facts which are relevant to the issues of the case. The defendant seeks to have many paragraphs of the finding stricken out as found without evidence, and to have several statements in her draft-finding added as undisputed facts. In certain respects the finding is somewhat ambiguous rather than incorrect. Thus in a statement in paragraph fourteen that Isabella Platt, with her husband, entered into possession of "the property" we understand the court to be referring to the entire tract of which it found the land in question then to be a part, rather than to that land in particular. So where the court found that the plaintiff cut hay, and trimmed brush several times about the lot, and used it occasionally for pasturage, without objection from the defendant or anyone else, it is obviously referring to the time before the controversy arose between the parties as it is stated in the complaint and admitted in the answer. In a few respects evidently by inadvertence the statements of the trial court are not quite correct. Thus where it finds that the plaintiff went over the boundaries of the property with his grantor Emma Austin and her husband and with a surveyor, both before and after the conveyances to him, his own testimony shows that he only went over them with the husband. Again, where the court finds that Emma Austin assisted her father and her husband upon the premises, her testimony was only that she "used to help the men hay." Again, where the court finds that none of the deeds in defendant's chain of title had been recorded in the town of Wilton, it overlooked the two deeds to Henry, son of Stephen Hoyt

the elder, made when the dower of the latter's widow was divided, which were there recorded, although one of them describes the property conveyed as located solely in the town of Norwalk. Again, where the court says that when originally laid out the driftway was the only access to a road from the tract in question, it evidently referred, not to the time it was established in the distribution of the estate of Stephen Hoyt the elder, but to the situation created by the mutual partition of the dower lands after the death of the widow. There is in the record no evidence to support two or three other statements in the finding, but as only a small portion of the evidence is before us, we cannot say that they were found without evidence. None of the paragraphs of the draft-finding which the appellant seeks to have added can be regarded as stating admitted or undisputed facts.

With the slight changes in the finding which we have noted, it must stand, unless the finding that the land in question was included within the deeds under which the plaintiff claimed was made without evidence to support it or in violation of some rule of logic or law. That brings us to the defendant's appeal and we first consider certain rulings upon evidence to which the defendants took exception, and which bear directly upon this issue. In so far as error is claimed in the admission of evidence, all the rulings except one are not properly before us, because it does not appear whether or not the questions objected to were answered, or if so, what the answers were. As, however, the trial court did not commit error in allowing the questions we do not rest the case as to them upon this ground. A title searcher, whose qualifications are not questioned, having testified that he had a sketch showing how the tracts were distributed as a part of the estate of Stephen Hoyt was asked whether from that distribution he could locate

the lot in question and tell to whom it was distributed. The question called not for a legal construction of the distribution but for the application of its terms to the land, so as to identify the actual location of the lot as described in it. A question of this nature requires not merely a knowledge of the principles and practices of conveyancing as far as they enter into the interpretation of deeds, but also the power to compare and coordinate various descriptions of the land in question and of other adjacent lands and to fit together the boundaries, monuments and other indicia of location so as to apply the terms of the deeds to the actual ground as represented upon a properly authenticated map. Such a function is so much a matter of special training and experience as to fall within the proper range of expert knowledge and the trial court was not in error in admitting the question. *Temple* v. *Gilbert,* 86 Conn. 335, 344, 85 Atl. 380. The same is true of a similar question put to this witness as to the location of certain other tracts included in the distribution. The same witness was asked whether he could locate from his examination of the records the boundary line between the towns of Norwalk and Wilton which the plaintiff claims crossed the lot in question, and was permitted over the defendants' objection to locate it upon a rough sketch of the defendants' property. Such a question calls for the same type of opinion as that already referred to, and we cannot say that the record might not afford a sufficient basis for it. Had the defendants made at the time the objection raised in the brief, that the answers to such questions required the production in court of the matters of record upon which they were based, a very different situation would be presented. Such testimony as this witness gave did not usurp the function of the trial court, to determine whether the lot in question was embraced within the

deeds under which one or the other party claimed, but it was before the court only for such weight as under all the circumstances it deemed the evidence to merit and for such assistance as it might in fact afford the court in deciding that issue.

Only one other ruling upon evidence deserves comment. A witness for the defendants testified that soon after they took title, she was with them upon the lot in question and she was then asked what Mrs. Hoelscher told her. This was claimed as tending to show an ouster of the plaintiff's grantors at the time they conveyed to him, some six weeks after the defendants acquired their title, and so, to make that conveyance void under the statutes. General Statutes, § 5020. The court excluded the question upon the ground that such an ouster could not be proved under the defendants' general denial of the plaintiff's allegation that he was seized and possessed of the property. The possession which will constitute an ouster under this statute is required to be of the same nature as that which, if continued for fifteen years, would ripen into a title by adverse possession. *Lengyel* v. *Peregrin,* 104 Conn. 285, 288, 132 Atl. 259. The trial court has found with reference to the defendants' use and possession of the lot in question that Mrs. Hoelscher caused some small trees to be removed from it, without the knowledge of the plaintiff, and, on the other hand, it has found, with the corrections made in the finding as before detailed, that the plaintiff's predecessor in title, Emma Austin, had lived on the farm of which it finds the lot in question was a part, for sixty years before the deed to the plaintiff, and had herself worked upon the lot as a part of it, that the plaintiff took possession of the lot and went over the boundaries with Emma Austin's husband, and that he had cut hay upon it, trimmed the brush by the fences several times, and used the lot

occasionally for pasturing, without objection from any-
one. Under these circumstances there was no such
exclusive uninterrupted and open possession by the
defendants as would constitute an ouster. *Schroeder*
v. *Taylor*, 104 Conn. 596, 605, 134 Atl. 63; *Phillips* v.
*Bonadies*, 105 Conn. 722, 728, 136 Atl. 634. Hence,
whatever statement Mrs. Hoelscher might have made
as tending to show a claim to the property could have
had no effect upon the outcome of the case and the
ruling was immaterial.

The land in question originally formed a part of a
considerable farm belonging to Stephen Hoyt. Thirty-
five acres of the farm were in 1828 set to his widow as
dower and the rest was distributed to his five chil-
dren, three sons, Stephen, Henry and Thaddeus, and
two daughters. Soon after, his widow died and the
dower land was divided among the children by mutual
quitclaim deeds. The boundaries of the various tracts
distributed, or conveyed by these deeds, to the various
children gave neither distances, monuments nor courses,
but, aside from certain references to the driftway and
statements of acreage, the identity of the different
tracts was made to depend upon the stated ownership
of abutting land. Both parties claimed under deeds
from children of Stephen Hoyt the elder and the ulti-
mate question was, did the tract in question fall with-
in the boundaries of the deeds under which the plain-
tiff claimed or within those of the deeds under which
the defendants claimed. There is presented no ques-
tion as to the meaning of the descriptions or terms of
any of the deeds, but the issue is, did one or the other
chains of title include the land in question. The trial
court has found that it was included in the deeds under
which the plaintiff claims and this is a finding of fact
which must stand if there was reasonable evidence to
support it and in reaching it the court violated no rule

of law or logic. Consideration of this vital feature of the case must start with a statement of the chains of title of the parties. In the distribution of the estate of Stephen Hoyt the elder, his son Stephen received two tracts, stated to be of about eight and nine acres respectively which are located by their bounds as being at the westerly end of the farm, farthest from the buildings of the homestead and the highway, and which have annexed to them a driftway running easterly to that highway, which in part at least can now be definitely located upon the ground. In the mutual partition of the dower lands, he received two other lots, one stated to comprise one acre and three roods, with portions of the dwelling-house and of the barn upon it and abutting upon the east upon the highway, the other stated to be of about ten acres, to which there was annexed a right in the driftway and which was bounded west upon "Stephen's own land," which may fairly be assumed to be land which had been previously distributed to him, easterly on land "deeded to Henry" which, as a comparison of the deeds of partition indicates, must mean land received by him when that partition was made. Stephen thus received land which, apart from that upon which the house and barn stood, had a stated area of about twenty-seven acres. This twenty-seven acres Stephen deeded in 1838 to Silas T. Hyatt and by mesne conveyance the trial court finds it has come to the plaintiff.

Henry, the son of Stephen Hoyt the elder, received certain lands in the distribution not directly involved in this controversy. In the mutual partition of the dower lands he received two deeds of contiguous pieces, one stated to be of about five acres, three roods and ten rods, lying northerly of the line dividing the towns of Wilton and Norwalk, which crossed the farm, and the other of about three acres southerly of the line,

bounded easterly by the first tract deeded to him and land deeded to Stephen, evidently the portion of the homestead the latter received, southerly by the driftway, and westerly by the other tract deeded to Stephen, with a right in the driftway. This tract clearly abutted upon the south upon the driftway and lay between the two tracts deeded to Stephen. In 1836 Henry Hoyt deeded a tract of a stated acreage of about four acres to Nathaniel Scofield. In 1849 Nathaniel Scofield deeded this land to David St. John, bounding it substantially in the same way as in the deed to him, but stating the acreage to be five and one half acres more or less. Meanwhile, in 1839, David St. John had acquired from Stephen the land upon which his portion of the dwelling-house stood, the stated acreage being two and one half acres more or less. At the time of the mutual partition of the dower land, the other portion of the dwelling-house and of the barn, with the land adjacent, stated to comprise about one acre, was deeded to Thaddeus Hoyt, another son of Stephen the elder; in 1841 he deeded sixteen rods of this upon which stood a part of the barn to Sally Hannon, and in 1843 he deeded to Mary St. John the remainder of the land, with his portion of the dwelling-house. These tracts all came by mesne conveyances or descent to the defendants.

The descriptions in the various conveyances fall far short of conclusively determining the controversy. The portions of the original dower land which have come to the plaintiff and the defendants respectively evidently abutted upon each other and also were either bounded upon the driftway or were so related to it as to have rights to its use. But whether the line between them fell at the easterly side of the disputed tract, as the plaintiff claims, or the westerly side as the defendant claims, would still remain a question. The

defendants' own map shows that the land in question lies partly north of the line between the towns of Wilton and Norwalk. At the time the widow's dower was partitioned Henry Hoyt received two deeds, as already noted, one of land in Wilton, and one of the land lying immediately south of it in Norwalk; in his conveyance to Nathaniel Scofield he bounds the land on the north by the town line, thus identifying it as the land received by him in the latter deed; and thereafter in the defendants' chain of title this land is always referred to as lying in the town of Norwalk; thus indicating that it did not include the lot in question. Moreover, one of the plaintiff's grantors, Emma Austin, as already noted, lived sixty years upon the farm of which the land in question is found to be a part, and assisted in farm work upon the lot and herself raked hay upon it, thus showing an actual user of it by the plaintiff's predecessor in title as a part of that farm. On the other hand, the defendant lays stress upon the acreages stated in the various deeds under which she holds title, claiming that they could not be satisfied without including in them the lot in question. The deeds upon which she relies are those subsequent to the mutual partition of the dower land. If the acreage stated in the deeds executed at that time be taken as the more accurate, as the trial court might not unreasonably do, to include the lot in question would be very considerably to exceed the acreage called for in the deeds under which the defendant claims. In addition to the facts found by the trial court, it also had before it for such weight as it deemed it to merit, the opinion of expert title searchers in support of the plaintiff's claim. There are discrepancies in the various descriptions in the deed, the evidence was not very compelling either way, and the problem confronting the trial court was a difficult one. We cannot say that it could not reasonably

have found that the tract in question formed a part of the dower land partitioned to Stephen Hoyt and that it came from him by descent and mesne conveyances to the plaintiff. It follows that there was no error upon the defendant's appeal.

Turning to the plaintiff's appeal, the driftway, as already noted, was created in the distribution of the dower lands as a part of the estate of Stephen Hoyt the elder, in order to afford access to other lands in the rear distributed to his children, and it was preserved in the mutual partition of the dower lands among the children after the widow's death. As originally established it ran across land now owned by the defendant, opening into a highway to the east. The right to use it was annexed to the tract of which the lot in dispute formed a part. At the time of the mutual partition, it afforded the only access to a highway from that lot; but for many years the lot has been used by those owning land to the west of it, having access to and bounded upon another highway, so that the original necessity for the driftway long ago ceased. A small brook crosses it, on the land owned by the defendant, and here the driftway was low and difficult of passage in times of high water. At some time beyond the memory of witnesses a small culvert was built over the brook south of the driftway and predecessors of the plaintiff in title passed through the south wall of the driftway over the culvert, and along the southerly side of that wall to the highway. While the plaintiff and his predecessors in title or their agents may have passed through the land at infrequent intervals during the last twenty-five years, it has not been used during this period as an appurtenance of the land in dispute. The driftway is now filled with small trees, shrubbery and weeds, and some small stones; it is physically passable, but has not been usable for many years. To use it a person would have

to pass around the residence or other buildings of the defendant Emma H. Hoelscher and through her dooryard. She has caused two small buildings to be moved directly into the line of the driftway, and about 1925 she prevented the plaintiff from cutting brush upon the land within its bounds.

We recently summed up the law applicable to the claim of an abandonment of an easement in these words: "Whether there has been an abandonment is a question of intention to be determined from all the surrounding circumstances, and is a question of fact and not of law. The proof must clearly indicate that it was the intention of the owner of the dominant estate to abandon the easement. Mere nonuser of an easement created by deed, however long continued, is insufficient to establish abandonment. There must also be some conduct on the part of the owner of the servient estate adverse to and inconsistent with the existence of the easement and continuing for the statutory period, or the nonuser must be accompanied by unequivocal and decisive acts clearly indicating an intent on the part of the owner of the easement to abandon the use of it." *Richardson* v. *Tumbridge,* 111 Conn. 90, 93, 149 Atl. 241. We have recited at length the findings of the trial court upon this issue, but we cannot find in them the elements necessary to support its conclusion of an abandonment of the driftway within the principles of law just cited, and must therefore find that conclusion to be erroneous.

There is no error upon the defendant's appeal; there is error upon the plaintiff's appeal and the case is remanded with direction to enter judgment for the plaintiff in accordance with this opinion.

In this opinion the other judges concurred.