PETER W. SMITH *v.* COLLEEN A. MUELLNER ET AL.
(SC 17700)

Rogers, C. J., and Borden, Palmer, Vertefeuille and Zarella, Js.*

_____

* The listing of justices reflects their seniority status on this court as of the date of argument.

Argued May 18—officially released August 14, 2007

*Glenn E. Knierim, Jr.,* for the appellants (named defendant et al.).

*R. Bartley Halloran,* for the appellee (plaintiff).

*Opinion*

ROGERS, C. J. This appeal raises issues concerning the acquisition and extinguishment of easement rights. The defendants, Colleen A. Muellner and Robert Muellner,[1] appeal from the judgment of the trial court quieting title to certain real property owned by the plaintiff, Peter W. Smith.[2] The defendants claim that the court: (1) improperly concluded that a deeded right-of-way they possessed over the plaintiff's property had been extinguished through the plaintiff's adverse use of the right-of-way; (2) improperly concluded that their predecessors in title had abandoned the right-of-way; (3) made an erroneous factual finding when rejecting their claim that they had acquired via prescription additional easement rights over a different portion of the plaintiff's property; and (4) applied the wrong burden of proof to their prescriptive easement claim. We agree with the defendants' first two claims in regard to the deeded right-of-way but are unpersuaded by the remaining claims relating to the alleged prescriptive easement. Accordingly, we affirm in part and reverse in part the judgment of the trial court.[3]

---

[1] Marjorie M. Connelly, who owned property jointly with Colleen A. Muellner and Robert Muellner, also was named as a defendant but died during the pendency of this litigation. No personal representative of Connelly's estate was substituted as a party. In response to the Muellners' motion for rectification, Connelly was deleted as a party from the judgment file. In this opinion, we use the term defendants in reference to Colleen A. Muellner and Robert Muellner only.

[2] The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] The defendants also argue that the court improperly ordered that the deeds to the parties' properties be amended to reflect extinguishment of the deeded right-of-way. In light of our determination that the court improperly concluded that the right-of-way had been extinguished, we do not reach this claim.

The following facts were found by the court or are not disputed. The parties are next door neighbors on Seaside Avenue in the town of Westbrook. Both parties' properties are bordered on the south by Seaside Avenue, and both parties' houses are located on the southern portions of their lots. The boundary between the properties runs generally north and south. The plaintiff's property is to the east of the defendants' property. To the east of the plaintiff's property is Pent Road, which runs north off of Seaside Avenue.

The deeds to the parties' properties indicate that the defendants' property is benefited, and the plaintiff's property is burdened, by an express right-of-way running over the northernmost five feet of the plaintiff's property between the northeast corner of the defendants' property and Pent Road.[4] Another right-of-way benefiting the defendants' property exists over the southernmost five feet of a neighbor's property to the north of the plaintiff's property. Together the two adjacent right-of-ways comprise a ten foot passageway between the defendants' backyard and Pent Road.[5]

The defendants' backyard is accessible via their driveway, which is located on the eastern side of their property along the common boundary with the plaintiff's property. The driveway runs north and south, leading from Seaside Avenue to the rear of the defendants' property. The driveway is narrow because the distance between the defendants' house and the common boundary is only 8.3 feet.

[4] The right-of-way originates in a 1924 conveyance.

[5] The owner of the property to the north of the plaintiff is not a party to this litigation and has not otherwise challenged the defendants' easement rights in the northern half of the passageway. Furthermore, the plaintiff has not claimed to have adversely possessed the northern half of the passageway in a manner hostile to the defendants' easement rights therein. In short, the claim of extinguishment at issue is limited to the southern half of the passageway only, i.e., the five foot right-of-way over the plaintiff's property.

The plaintiff acquired his property in 1972. His parents owned the property previously, from 1951 to 1972. The defendants purchased their property in 1994 from their predecessors in title, Robert Schulz and Barbara Schulz (collectively, Shulzes), who owned the property from 1978 to 1994. During their period of ownership, the Schulzes never used the deeded right-of-way. Instead, they typically accessed their property by using their driveway.

In 2002, disagreements between the parties arose in regard to the defendants' right to utilize the deeded right-of-way and, in addition, their encroachment on the plaintiff's property in the use of their driveway. The plaintiff started preventing the defendants from driving vehicles over a different portion of his property, south of the right-of-way, an action he previously had allowed while the defendants were renovating their house and which the defendants had continued following completion of the renovations. The plaintiff also had the border area surveyed and erected a wooden fence along the common boundary. The fence, together with the proximity of the defendants' house to the boundary, prevented the defendants from entering or exiting their vehicles when they were parked on the southernmost portion of their driveway and made navigation of the driveway more difficult.

In May, 2003, the defendants, by a letter from their counsel, informed the plaintiff that they intended to enter and clear the deeded right-of-way so that they could use it for vehicular access to their property. They proposed to remove vegetation, grade the surface, install appropriate surface material such as crushed stone and maintain the area as prepared into the future.

Thereafter, the plaintiff filed this action claiming that his property no longer was subject to the deeded right-of-way and requesting that the court quiet title accord-

ingly. See General Statutes § 47-31. He also sought to enjoin the defendants, both temporarily and permanently, from entering his property and preparing the right-of-way for use. According to the plaintiff, the right-of-way had been extinguished, both through his adverse use[6] of the easement area and its abandonment by the defendants and the Schulzes.

The defendants denied the plaintiff's allegations as to extinguishment of the deeded right-of-way, raised a number of special defenses, brought a multicount counterclaim and responded with their own request for injunctive relief. Specifically, they asked that the plaintiff be prohibited from further obstructing the right-of-way and interfering with their use of it.

[6] The plaintiff stated his first claim of extinguishment using the terminology "adverse possession" and the trial court employed that terminology in its memorandum of decision. We note, however, that the proper terminology for describing a servient owner's actions that effect extinguishment of easement rights over his property is "adverse use." As the Appellate Court has explained, "[a]lthough at times, litigants and the courts conflate the concepts and underlying elements of adverse use and adverse possession, it is clear that these are distinct doctrines and equally apparent that the proper theory under which to establish the extinguishment of an easement is through adverse use by the servient estate holder. See 2 Restatement (Third) Property, Servitudes § 7.7, comment (b) (2000) ([a]dverse uses meeting the requirements of §§ 2.16 and 2.17 that unreasonably interfere with easements or violate covenants, if continued throughout the prescriptive period, extinguish the benefit of the servitude to the extent of the adverse use); 5 Restatement (First) Property, Servitudes § 506 (1944) ([a]n easement is extinguished by a use of the servient tenement by the possessor of it . . . provided (a) the use is adverse as to the owner of the easement and (b) the adverse use is, for the period of prescription, continuous and uninterrupted); 4 R. Powell, [Real Property (2004)] § 34.21 [1] (The servient owner can extinguish an easement in whole or in part by adverse uses continued for the prescriptive period. As in the case of the creation of an easement by prescription . . . the uses must be adverse, continuous, uninterrupted, and for the prescriptive period.)." (Internal quotation marks omitted.) *Boccanfuso* v. *Conner*, 89 Conn. App. 260, 283, 873 A.2d 208, cert. denied, 275 Conn. 905, 882 A.2d 668 (2005).

Although the trial court used inaccurate terminology, it nevertheless properly cited applicable case law in analyzing the plaintiff's claim. In this opinion, we will describe and analyze the plaintiff's claim in terms of adverse use and not adverse possession.

The defendants also requested that the plaintiff be required to remove the fence along the defendants' driveway, which marks the boundary line between the two properties. In the third and fourth counts of the counterclaim, the defendants alleged that they had acquired by prescription the right to use a portion of the plaintiff's property as part of their driveway, and they argued that the fence was an obstruction to their use of that easement. The claimed easement area was along the western boundary of the plaintiff's property, adjacent to the defendants' driveway, and measured approximately 3.7 feet in width and sixty feet in length.

Following a preliminary injunction hearing, the court, *Silbert, J.*, denied both parties' requests for injunctive relief as to the deeded right-of-way, leaving the status quo in place. The court granted the defendants' request insofar as it sought removal of the plaintiff's fence.

The case was then tried before the court, *Aurigemma, J.* The court concluded that the deeded right-of-way across the plaintiff's property had been extinguished, both by the plaintiff's adverse use of the easement area and by the Schulzes' abandonment of the way. It held further that the defendants had failed to prove the elements necessary to acquire a prescriptive easement in the common boundary area. This appeal followed. Additional facts will be provided where relevant to the claims raised.

I

The defendants first claim that the court improperly concluded that the deeded right-of-way had been extinguished on the basis of the plaintiff's adverse use because the manner in which the plaintiff had used the way was insufficiently adverse to the defendants' easement rights. We agree.

The question of whether the elements necessary to establish adverse use have been proven in a particular

case is a factual one for the trier; *Robert S. Weiss & Co.* v. *Mullins*, 196 Conn. 614, 618, 495 A.2d 1006 (1985); *Public Storage, Inc.* v. *Eliot Street Ltd. Partnership*, 20 Conn. App. 380, 381, 567 A.2d 389 (1989); subject to the clearly erroneous standard of review. *Seymour* v. *Region One Board of Education*, 274 Conn. 92, 104, 874 A.2d 742, cert. denied, 546 U.S. 1016, 126 S. Ct. 659, 163 L. Ed. 2d 526 (2005). We will not disturb the court's conclusion that an easement has been extinguished by adverse use unless the underlying facts found lack evidentiary support; see id.; or do not legally and logically support that conclusion. See *American Brass Co.* v. *Serra*, 104 Conn. 139, 147, 132 A. 565 (1926); see also *Schroeder* v. *Taylor*, 104 Conn. 596, 606, 134 A. 63 (1926); *Public Storage, Inc.* v. *Eliot Street Ltd. Partnership*, supra, 381.

Although the law does not favor termination of property rights, a deeded easement may be extinguished by "acts of the owner of the servient tract, showing an intent to obstruct the dominant owner's enjoyment of the easement." (Internal quotation marks omitted.) *American Brass Co.* v. *Serra*, supra, 104 Conn. 146. "[I]f the servient owner should by adverse acts lasting through the prescriptive period obstruct the dominant owner's enjoyment, intending to deprive him of the easement, he may by prescription acquire the right to use his own land free from the easement." (Internal quotation marks omitted.) Id. To prove that an easement has been extinguished by prescription, the owner of a servient tract must show that he, "by adverse use of a notorious, exclusive and hostile character, obstructed and excluded the owners of the dominant tract so as to form a basis for an inference of a grant, releasing the easement, by an owner of the dominant tract to the owner of the servient tract." Id., 150; see also *Schroeder* v. *Taylor*, supra, 104 Conn. 605. In Connecticut, such adverse use, to effect extinguishment, must persist con-

tinuously for a period of fifteen years. See General Statutes § 47-37.

Although the acts necessary to *extinguish* an easement by prescription are described in the law similarly to those necessary to *acquire* an easement by prescription, extinguishment and acquisition differ fundamentally such that a given act may be considered adverse for purposes of acquiring an easement, but not adverse for purposes of extinguishing one. Specifically, a party attempting to acquire an easement by prescription generally has no ownership rights in the land in question and, therefore, no right to use it in any fashion. Thus, that party's open and visible use of the land, under a claim of right and absent permission from the fee owner, is sufficient to start the running of the prescriptive period. See *Waterbury* v. *Washington*, 260 Conn. 506, 577, 800 A.2d 1102 (2002).

In contrast, in the context of extinguishment, the adverse actor typically is the fee owner of the land subject to the easement and, therefore, is entirely justified in using that land in any way not inconsistent with the existence of the easement. See *American Brass Co.* v. *Serra*, supra, 104 Conn. 150 ("[t]he owners of the servient tract have by law all the rights and benefits of ownership consistent with the existence of the easement, and the exercise of such rights is not an adverse or hostile act which gives the owner of the dominant tract a right of action therefor"); 2 G. Thompson, Real Property (1980) § 431, p. 683 ("The owner of the soil [over which a right-of-way exists] retains full dominion over his land subject merely to the right-of-way. . . . The owner may make any use of his land which does not interfere with a reasonable use of the way."). Accordingly, the acts of a servient owner necessary to extinguish an easement must be distinctly adverse to the existence of the easement and not merely acts showing dominion over the servient estate. See *Mueller* v.

*Hoblyn*, 887 P.2d 500, 507 (Wyo. 1994); see also *Estojak v. Mazsa*, 522 Pa. 353, 361–63, 562 A.2d 271 (1989). "Because the servient [owner], as long as he or she does not interfere with the right of user, may use his or her land in any manner desired, an act that serves to start the prescription period in the servient [owner's] favor must be one *clearly wrongful* as to the owner of the easement," for example, "the erection of permanent structures, such as . . . building[s] . . . or other obstructions seriously interfering with the right of use . . . ."[7] (Emphasis added.) 4 R. Powell, Real Property (2007) § 34.21 [1], pp. 34-196 through 34-197; see also annot., 25 A.L.R.2d 1265, 1330 (1952). Public policy favors productive land use, and the foregoing rule "maximizes the aggregate utility of the [easement] and the servient estate." 1 Restatement (Third), Property, Servitudes § 4.9, comment (b), p. 582 (2000).

Additional considerations apply when an easement is not being actively used by the dominant owner. In the case of such nonuse, the servient owner may use his land quite freely without interfering with the dominant owner's interests. "Where the dominant owner abstains from use of the easement, the servient owner, in the exercise of the privilege to use his or her own land in any manner desired not interfering with the exercise of the easement, has an enlarged scope of privileged action. It is, therefore, under these circumstances more difficult for the servient owner to establish the adverse character of behavior." 4 R. Powell, supra, p. 34-199. In the case of an improvement not interfering with current uses of an easement, "[w]hether the improvement is an unreasonable interference with the servitude

---

[7] As one commentator has observed, "[t]he scope of acts that the servient owner can properly do under his or her right to use the land in any way not interfering with the easement is so great that an 'interfering act' is sometimes difficult to contrive." 4 R. Powell, Real Property (2007) § 34.20 [2], p. 34-193 n.28.

depends on the character of the improvement and the likelihood that it will make future development of the easement difficult. If the improvement is temporary and easily removed, it is generally not unreasonable. The more expensive the improvement or the more difficult its removal is likely to be, the more likely is the conclusion that the improvement is an unreasonable interference with the easement or profit."[8] 1 Restatement (Third), supra, § 4.9, comment (c), illustration (4).

Finally, it often is said that the acts effective to extinguish an easement by prescription are those that would give rise to an action by the easement owner to enjoin their continuance. "It is essential, in order that the user be adverse, that it be such as would give rise to a right of action to the dominant owner, since otherwise he might be deprived of the right without the power to prevent it. The accrual of the right of action or other legal redress is the starting point of a title by prescription." (Internal quotation marks omitted.) *American Brass Co.* v. *Serra*, supra, 104 Conn. 151; see also L. Jones, Easements (1898) § 867, p. 695; 2 G. Thompson, supra, § 440, p. 717.

Decisions of Connecticut's appellate courts addressing claims of extinguishment of easements by prescription are illustrative of the foregoing principles. In *Dewire* v. *Hanley*, 79 Conn. 454, 457, 65 A. 573 (1907), this court held that the portion of a deeded right-of-way that lay beneath part of a stone wall built along a boundary had not been extinguished by the adverse

---

[8] In regard to the erection of fencing by the servient owner, "[s]everal courts have held . . . that where an easement has been created but no occasion has arisen for its use, the owner of the servient tenement may fence the land and this will not be deemed adverse until such time as the need for the right-of-way arises and the owner of the dominant tenement demands that the easement be opened and the servient tenement owner refuses to do so." (Internal quotation marks omitted.) *Sabino Town & Country Estates Assn.* v. *Carr*, 186 Ariz. 146, 150, 920 P.2d 26 (1996).

claimant's maintenance of that wall throughout the pre-scriptive period. The court noted that the wall was a proper division fence and "[t]he party erecting it had, therefore, a right to put it where it was, and no claim of adverse possession could result in his favor there-from, as to any part of the ground covered by it." Id. Whether the wall, which was three and one-half feet wide, was a substantial, permanent structure was not an explicit factor in the court's analysis, likely because it already had been dismantled at the time the case was tried.[9]

In *American Brass Co.* v. *Serra*, supra, 104 Conn. 150–52, the servient owner's blocking of an easement by a wire fence, throughout the prescriptive period and well beyond, was held to be insufficiently adverse to extinguish the easement. This conclusion was com-pelled by the facts that the fence was a slight obstruc-tion to passage that easily could be removed, that it was within the servient owner's rights to maintain it for purposes of pasturage and that the dominant owners had had no need to use the easement for over thirty years. Id., 150–51. The easement at issue was granted to provide the dominant owners access to a woodlot. Because the wood there was grown "in natural course and likely to be cut only once in thirty or thirty-five years"; id., 142; "the owners of the dominant tract did not use the way, and had no occasion to use the way, and would not have occasion to use it until the wood by natural growth reached a suitable size for cutting for fuel . . . ." Id., 145.[10]

---

[9] The dominant owner in *Dewire* v. *Hanley*, supra, 79 Conn. 455, used the portion of the easement not covered by the wall "as her necessity and convenience required . . . ." The wall apparently did not interfere with that use.

[10] Several decisions of our sister courts, in discussing unused easements, have employed reasoning similar to this court's reasoning in *American Brass Co.* See, e.g., *Sabino Town & Country Estates Assn.* v. *Carr*, 186 Ariz. 146, 150–51, 920 P.2d 26 (1996) (servient owner's blocking of easement with split rail, barbed wire fences did not extinguish easement for motor

Consistent with the legal principles previously enu-
merated, cases in which determinations of extinguish-
ment have been sustained involved substantial,
permanent structures obstructing easement areas. In
*Goodwin* v. *Bragaw*, 87 Conn. 31, 39–40, 86 A. 668
(1913), the defendant's predecessor was held to have
adversely possessed the space over a gangway by his
construction of an elevated structure spanning the gang-
way, thereby extinguishing the plaintiff's easement
rights in the gangway to the extent of the obstruction.
In *Russo* v. *Terek*, 7 Conn. App. 252, 255, 508 A.2d 788
(1986), the plaintiffs' right to pass by motor vehicle
over a right-of-way was extinguished by the defendant's
construction of an outdoor fireplace, six feet high and
eight feet wide, in the center of the way. In *Public
Storage, Inc.* v. *Eliot Street Ltd. Partnership*, supra, 20
Conn. App. 381–82, an easement was extinguished by
the construction of a building on the land subject to
the easement and the erection of a six foot high, chain
link security fence surrounding that building.[11]

vehicle access where dominant owner had no need for such access); *Kolouch*
v. *Kramer*, 120 Idaho 65, 67–69, 813 P.2d 876 (1991) (servient owner's
acts of planting trees, erecting fence and constructing concrete irrigation
diversion not adverse when undertaken before dominant owner's need to
use easement arose); *Castle Associates* v. *Schwartz*, 63 App. Div. 2d 481,
490, 407 N.Y.S.2d 717 (1978) (fencing of property by servient owner, prior
to request to open, did not extinguish right-of-way); *Edmonds* v. *Williams*, 54
Wash. App. 632, 637, 774 P.2d 1241 (1989) (fence blocking unused easement
insufficiently adverse to extinguish it); *Mueller* v. *Hoblyn*, supra, 887 P.2d
507 (servient owner's maintenance of boundary fencing, growing of crops
and drilling of water well within unused easement area insufficient to termi-
nate easement).

[11] In *Boccanfuso* v. *Conner*, 89 Conn. App. 260, 293–95, 873 A.2d 208, cert.
denied, 275 Conn. 905, 882 A.2d 668 (2005), the Appellate Court upheld the
trial court's conclusion that a portion of a right-of-way had been extinguished
by the servient owner's construction and planting, respectively, of a deck
and shrubbery within the easement area. Whether shrubbery qualifies as a
permanent structure is questionable. We note, however, that the dominant
owner in *Boccanfuso* did not argue that the character of the encroachments
precluded a finding that they were adverse to the easement, but rather, that
those encroachments were not maintained by the servient owner under a
claim of right.

We now turn to the case on appeal. In support of its conclusion that the deeded right-of-way had been extinguished by the plaintiff's adverse use, the court made the following findings. "A stone wall has existed in the right-of-way near the border of the [plaintiff's] property for more than fifty years. Mature hedges and an ancient chestnut tree have been located within the right-of-way for more than thirty years. During the time in which he has owned the property, [the plaintiff] has added to the stone wall and has placed a park bench and additional shrubs in the right-of-way. There is also a shed on the [plaintiff's] property which is partially within the right-of-way. The court finds that the plaintiff's use of the area within the right-of-way as a portion of his own lawn has been open, hostile, visible, under a claim of right and uninterrupted since 1972." Furthermore, according to the court, "[t]he stone wall, hedges, shrubs and the chestnut tree have effectively blocked the use of the right-of-way for at least thirty years." The court concluded that the nature of the plaintiff's use, from 1972 forward, was sufficient to exclude the defendants and their predecessors from the right-of-way and, therefore, that the right-of-way had been extinguished.

We have reviewed the entire record to discern the evidentiary foundation for the court's factual findings. Although the court's findings as stated do not lack evidentiary support, they nevertheless do not legally and logically support the court's conclusion that the right-of-way had been extinguished through the plaintiff's adverse use. We make the following observations on the basis of undisputed evidence, submitted by the plaintiff, that pertains to the court's findings.

The stone wall relied upon by the court as demonstrating the plaintiff's adverse use is not located in the disputed area of the passageway, but rather, is in the

portion owned by the plaintiff's neighbor to the north.[12] See footnote 5 of this opinion. In any event, pursuant to the principles articulated in *American Brass Co.* v. *Serra*, supra, 104 Conn. 150–51, and *Dewire* v. *Hanley*, supra, 79 Conn. 457, a servient owner has every right to maintain such an easily dismantled[13] boundary wall when the dominant owners, like the defendants and their predecessors here, have had no need to use the right-of-way. Accordingly, the presence of the wall cannot be regarded as adverse.

As to the park bench and the shed referenced by the court, the plaintiff's uncontested testimony at trial established that those items have been in existence for less than the full prescriptive period of fifteen years. See General Statutes § 47-37. Consequently, regardless of whether the presence of those items, given their nature, was adverse to the existence of the right-of-way, it was improper for the court to have considered them.

Clearly, the most substantial obstruction in the right-of-way is the ancient chestnut tree, which is in the center of the way and was estimated by the defendants'

---

[12] At trial, the plaintiff conceded that the stone wall and the bulk of the shrubbery that he planted were on his neighbor's property. Additionally, a survey submitted by the plaintiff depicts the wall in the northern half of the passageway.

[13] The stone wall at issue, compared to the one in *Dewire* v. *Hanley*, supra, 79 Conn. 455, is rather meager in size, measuring eight feet in length and no more than one foot in height, whereas a survey shows the entire length of the right-of-way to be fifty-two feet. The plaintiff's counsel, at oral argument before this court, asserted that the wall runs the entire length of the right-of-way. That assertion was not made at trial, and there is no support in the record for it. To the contrary, the plaintiff's surveyor testified that the wall measured eight feet long and one foot high. The defendants' surveyor did not contest the size of the structure, but disputed the plaintiff's characterization of it as a stone wall, instead describing it as three small stacks of flagstones. In the plaintiff's memorandum of law submitted in support of his pretrial request for temporary injunctive relief, the plaintiff did not mention the wall, the bench or the shrubbery in describing the obstructions in the right-of-way, but only the chestnut tree and the mature hedges.

surveyor to be in the range of 100 years old. Otherwise, there is vegetation, both cultivated and naturally occurring. In regard to these items, courts routinely reject that vegetation on an easement, both cultivated and natural, constitutes adverse use adequate to extinguish the easement. See *Russo* v. *Terek*, supra, 7 Conn. App. 254 (right to pass on foot not extinguished by cultivation of garden, shrubbery, trees, lilac bushes that made passage "very difficult"); see also *Desotell* v. *Szczygiel*, 338 Mass. 153, 159–60, 154 N.E.2d 698 (1958) (presence of wild trees, brush on easement not adverse use by servient tenant); *Armour* v. *Marino*, 140 App. Div. 2d 752, 753, 527 N.Y.S.2d 632 (1988) (garden, trees not adverse use of right-of-way); *Piper* v. *Mowris*, 466 Pa. 89, 97, 351 A.2d 635 (1976) (servient owner's planting of trees near right-of-way that "was overgrown like a wilderness" did not extinguish way); but see *Simpson* v. *Fowles*, 272 Or. 342, 344, 536 P.2d 499 (1975) (easement extinguished by maintenance of filbert orchard on servient estate, obstructing easement, for thirty-five years).

Moreover, the plaintiff had no duty to keep the right-of-way clear by removing the chestnut tree and naturally occurring overgrowth.[14] See *Kelly* v. *Ivler*, 187 Conn. 31, 45, 450 A.2d 817 (1982) (servient owner not obligated to maintain easement); *Suitts* v. *McMurtrey*, 97 Idaho

---

[14] Rather, it is the dominant owner who is responsible for putting an easement in a usable state and maintaining it thereafter. See *Kuras* v. *Kope*, 205 Conn. 332, 342, 533 A.2d 1202 (1987) ("[t]he owner of [a] right-of-way may repair it, and do whatever is reasonably necessary to make it suitable and convenient for his use" [internal quotation marks omitted]); *Earley* v. *Hall*, 89 Conn. 606, 611, 95 A. 2 (1915) ("[a]s a general rule, it is the duty of one who is the owner of a right-of-way over lands of another to keep it in repair, to protect and maintain it"); *Beneduci* v. *Valadares*, 73 Conn. App. 795, 804–805, 812 A.2d 41 (2002) (court properly authorized dominant owner to grade, put gravel on right-of-way); see also 1 Restatement (Third), supra, § 4.13 (1); 2 G. Thompson, supra, § 428, pp. 666–67. Nevertheless, "[i]f there are trees in the line of the way and it is necessary [for the dominant owner] to cut them down and remove them, the property in the trees so cut remains in the [servient] landowner." L. Jones, supra, § 817, p. 658.

416, 418, 546 P.2d 62 (1976) (servient owner has no duty to remove portion of tree interfering with dominant owner's use of easement); see also 1 Restatement (Third), supra, § 4.13 (2) (servient owner not obligated to maintain easement); L. Jones, supra, § 831, p. 668 (same). Because the plaintiff's failure to remove naturally occurring vegetation from the right-of-way was not actionable, the presence of that vegetation on the way cannot be considered adverse. See *American Brass Co.* v. *Serra*, supra, 104 Conn. 151; L. Jones, supra, § 867, p. 695; 2 G. Thompson, supra, § 440, p. 717.

On the basis of the foregoing analysis, we conclude that the court's determination that the right-of-way was extinguished by the plaintiff's adverse use does not flow legally or logically from the subordinate facts found. See *American Brass Co.* v. *Serra*, supra, 104 Conn. 147. Consequently, that determination cannot stand.

## II

The defendants next argue that the trial court improperly concluded that the deeded right-of-way had been extinguished due to the Schulzes' abandonment of it. We agree.

The following additional facts, as found by the court, are pertinent to this claim. During the sixteen years that they owned the property in question, neither Robert Schulz nor Barbara Schulz ever used the deeded right-of-way or attempted to do so, although they were aware of its existence. On occasion, the plaintiff permitted the Schulzes to drive across a different portion of his property, not within the bounds of the way, because the way was impassible. The Schulzes never claimed, however, that they had a right to do so. After citing Robert Schulz' testimony that he was aware of the easement but never had used it because it was blocked by hedges and other obstructions, and noting that Robert Schulz never had asserted any right to use the easement,

but rather, permissibly had used another portion of the plaintiff's property when necessary, the court concluded that "[t]he Schulzes' failure to use the easement of which they were aware for a period of sixteen years constituted an abandonment of the easement."[15] The defendants challenge this conclusion.

"An easement may be extinguished by a written release or by an abandonment of his right by the owner of the dominant estate. Whether there has been an abandonment is a question of intention to be determined from all the surrounding circumstances, and is a question of fact and not of law. The proof must clearly indicate that it was the intention of the owner of the dominant estate to abandon the easement." *Richardson* v. *Tumbridge*, 111 Conn. 90, 93, 149 A. 241 (1930). Nevertheless, when a trial court's factual findings do not include the elements necessary to support its conclusion of abandonment within controlling principles of law, a reviewing court will set aside that conclusion as improper. See id., 98; see also *Byard* v. *Hoelscher*, 112 Conn. 5, 16, 151 A. 351 (1930).

"Mere nonuser of an easement created by deed, however long continued, is insufficient to establish abandonment. There must also be some conduct on the part of the owner of the servient estate adverse to and inconsistent with the existence of the easement and continuing for the statutory period, or the nonuser must be accompanied by unequivocal and decisive acts clearly indicating an intent on the part of the owner of the easement to abandon the use of it." *Richardson* v. *Tumbridge*, supra, 111 Conn. 93–94; see also *Byard* v. *Hoelscher*, supra, 112 Conn. 16; *Stueck* v. *Murphy Co.*, 107 Conn. 656, 662–69, 142 A. 301 (1928); *American Brass Co.* v. *Serra*, supra, 104 Conn. 148.

---

[15] The court's findings as to the Schulzes' failure to use the right-of-way are based on the Schulzes' deposition testimony, which was admitted into evidence. The Schulzes did not testify at trial.

"As to the absence of a duty on the part of the owner of the dominant tract to use a way in order to maintain title to it, the law has been stated as follows: A person who acquires title by deed to an easement appurtenant to land has the same right of property therein as he has in the land and it is no more necessary that he should make use of it [the easement] to maintain his title than it is that he should actually occupy or cultivate the land. Hence his title is not affected by nonuser, and unless there is shown against him . . . loss of title in some of the ways recognized by law, he may rely on the existence of his property with full assurance that when occasion arises for its use and enjoyment he will find his rights therein absolute and unimpaired." (Internal quotation marks omitted.) *American Brass Co.* v. *Serra*, supra, 104 Conn. 145; see also *Schroeder* v. *Taylor*, supra, 104 Conn. 605 (dominant owners' nonuse of right-of-way "is logically accounted for on a ground consistent with a continuing right"); 2 G. Thompson, supra, § 443, p. 735 ("[t]he reason mere nonuser will not destroy an easement is that it is a property right and thus it is not necessary that the owner make use of it to keep his right").

The foregoing principles long have been the law in Connecticut, and the great weight of authority is in accord. See 2 Restatement (Third), Property, Servitudes § 7.4, comment (c), p. 354 (2000) ("Failure to take advantage of a servitude benefit, even for a lengthy period, is seldom sufficient to persuade a court that abandonment has occurred. Some additional action on the part of the beneficiary inconsistent with continued existence of the servitude is normally required . . . ."); 4 R. Powell, supra, § 34.20 [2], p. 34-188 ("[i]t seems to be well-settled that an easement created by a deed of grant, or otherwise by a writing, cannot be proved to have extinguished by proof only of nonuser, no matter how long such nonuser may have continued"); 2 G.

Thompson, supra, § 443, p. 743 ("An easement created by deed is not defeated by mere nonuser. There must be in addition other acts by the owner of the dominant estate conclusively and unequivocally manifesting either a present intent to relinquish the easement or a purpose inconsistent with its further existence."); annot., 62 A.L.R.5th 219 (1998) ("The vast majority of cases take the position that an easement, whether by grant or by prescription, cannot be lost by mere nonuse, however long continued, unless accompanied by an affirmative act on the part of the owner of the easement indicating an unequivocal intention to abandon it, and the acts claimed to constitute the abandonment must be of a character so decisive and conclusive as to indicate a clear intent to abandon the easement.").[16]

The court's conclusion that the Schulzes had abandoned the deeded right-of-way appears to rest largely

---

[16] Our jurisprudence includes a line of cases articulating the law on abandonment in such a way as to suggest that mere nonuser of an easement *is* enough to show abandonment. Specifically, those cases have stated that "[m]ost frequently, where abandonment has been held established, there has been found present some affirmative act indicative of an intention to abandon . . . *but nonuser, as of an easement,* or other negative or passive conduct *may be sufficient to signify the requisite intention and justify a conclusion of abandonment.* The weight and effect of such conduct depends not only upon its duration but also upon its character and the accompanying circumstances." (Emphasis added; internal quotation marks omitted.) *Carothers* v. *Capozziello,* 215 Conn. 82, 130, 574 A.2d 1268 (1990); see also *Simone* v. *Miller,* 91 Conn. App. 98, 103, 881 A.2d 397 (2005); *McManus* v. *Roggi,* 78 Conn. App. 288, 299, 826 A.2d 1275 (2003); *Friedman* v. *Westport,* 50 Conn. App. 209, 212–13, 717 A.2d 797, cert. denied, 247 Conn. 937, 722 A.2d 1216 (1998). The quoted language originated in *Glotzer* v. *Keyes,* 125 Conn. 227, 233, 5 A.2d 1 (1939), a case involving the abandonment of a mortgage security interest, not an easement, and was later quoted in *Carothers,* which involved the improper discarding of waste. As such, any statement of the law of abandonment in those cases, in regard to easements, was dicta. Although *Simone, McManus* and *Friedman* involved claims of abandonment of easements, the Appellate Court did not apply the quoted passage in any of those cases to hold that an easement was abandoned on the basis of nonuser alone. We take this opportunity to clarify that a dominant owner's nonuse of an easement, standing alone, is never enough to effect an abandonment.

on their nonuse of the way. Given the recited authority to the contrary, however, that conclusion is untenable. Furthermore, to the extent that the court relied on the Schulzes' occasional use of an alternate route across the plaintiff's property as evidence of their intent to abandon the deeded way, that reliance was improper.[17] It is well settled that "[a] right-of-way is not extinguished by the habitual use by its owner of another way, equally convenient, unless there has been an intentional abandonment of the former way." *Richardson* v. *Tumbridge*, supra, 111 Conn. 97; see also 2 G. Thompson, supra, § 443, p. 735; annot., 62 A.L.R.5th 219, 303 (1998); 25 Am. Jur. 2d 597, Easements and Licenses § 98 (2004). Thus, in *Nichols* v. *Peck*, 70 Conn. 439, 442, 39 A. 803 (1898), this court held that a dominant owner's permissive use of a different route over the servient land when changed conditions made use of the original way difficult did not amount to abandonment of the original way. Similarly, in *Richardson* v. *Tumbridge*, supra, 95–96, it was held that a dominant owner's use of an excavated stream bed for drainage for thirty years did not evidence that owner's intent to abandon a deeded right to construct a stone and tile drain over the servient property.[18]

[17] Although the court did not explicitly base its conclusion of abandonment on the Schulzes' failure to clear and maintain the right-of-way, we note that such reasoning also would have been improper. Although the owner of the dominant estate has the right to prepare and to maintain the easement for use; see footnote 14 of this opinion; he need not do so if he has no desire to use it. See L. Jones, supra, § 821, p. 660 ("[t]he owner of an easement is under no obligation to make repairs except as he may desire to do so for his own advantage"); 1 Restatement (Third), supra, § 4.13, comment (b) ("[s]ince the duty [of maintenance and repair] is a qualification of the privilege created by the easement or profit, no duty arises until the servitude beneficiary makes use of the easement or profit"). Thus, his failure to do so, standing alone, will not constitute an abandonment of the easement. See, e.g., *Byard* v. *Hoelscher*, supra, 112 Conn. 15–16 (rejecting claim that driftway was abandoned when it had been used infrequently for twenty-five years and had become "filled with small trees, shrubbery and weeds, and some small stones"); see also 62 A.L.R.5th 219, 321–24 (1998).

[18] But see *Stueck* v. *Murphy Co.*, supra, 107 Conn. 663–64 (dominant tenant abandoned easement for ingress and egress by agreeing to its closure and

Although typically we defer to a trial court's findings as to abandonment, the court's conclusion that the Schulzes had abandoned the deeded right-of-way does not flow legally and logically from the subordinate facts found. Consequently, that determination cannot stand. See *Byard* v. *Hoelscher*, supra, 112 Conn. 16; *Richardson* v. *Tumbridge*, supra, 111 Conn. 98.

## III

The defendants' next claim is that the court made an erroneous factual finding in determining that they had failed to prove that they had acquired prescriptive easement rights over a portion of the plaintiff's property adjacent to their driveway, along the common boundary. Specifically, they argue that the court improperly found that the railroad ties bordering the Schulzes' driveway did not encroach on the plaintiff's property. We are not persuaded.

The following additional facts, as found by the court, are relevant to this claim. When the Schulzes first acquired the property in 1978, the driveway was composed of dirt and grass. Thereafter, they installed a crushed stone driveway in the same space occupied by the existing driveway, bordered by railroad ties. After the defendants purchased the property in 1994, they removed the crushed stone and railroad ties and installed pavers. With the plaintiff's consent, the defendants placed the pavers well beyond the area where the ties had been, extending all the way to the western

substitution of new method of ingress and egress). Generally speaking, in cases in which courts have concluded that a dominant owner's use of an alternate way constitutes abandonment of easement rights, the dominant and servient owners had agreed that the new way would constitute a permanent substitute for the old one. See annot., 62 A.L.R.5th 219, 309 (1998). In the present matter, the plaintiff does not argue that the parties agreed to substitute a different route over his property in place of the deeded right-of-way, but rather, that the defendants have no right to cross over *any* portion of his property.

wall of the plaintiff's house.[19] Consequently, at the time of trial, the ties no longer existed and their precise former location was not apparent.

The defendants argued that they had acquired a prescriptive easement in the area of the plaintiff's property along the common boundary during the Schulzes' period of ownership because the Schulzes had maintained their driveway in that area. The area claimed by the defendants was a strip, approximately 3.7 feet wide, running north from Seaside Avenue for approximately sixty feet. The claimed strip tapered toward its northern end and terminated at the southwest corner of a barn located in the rear of the plaintiff's property near the common boundary.

They attempted to prove that claim by presenting evidence that the Schulzes' driveway had encroached over the border. Because the driveway, as such, no longer existed, the evidence presented consisted of the testimony of Robert Muellner and Robert Schultz, who testified as to their recollections of the location of the former driveway, and various photographs showing portions of the driveway and its railroad tie border.

The court made the following findings in rejecting the defendants' claim: "The railroad ties installed by the Schulzes were located on the boundary line between the [parties'] properties. [Robert] Schulz never intended to build any part of his driveway on the [plaintiff's] land and never did. The Schulzes never claimed to own any portion of the [plaintiff's] property. The defendants assert that the railroad ties were placed partially on the [plaintiff's] property and, therefore, they have adversely

---

[19] The distance between the parties' houses is 11.7 feet. Because the defendants' property comprised only 8.3 feet of that distance, the pavers extended approximately three and one-half feet over the common boundary. When the plaintiff consented to the installation of the pavers, he asked the defendants to use different colors to make the boundary line apparent, but the defendants ignored that request.

possessed that portion of the [plaintiff's] property. The court does not find that to be true." The court concluded that the defendants had failed to prove that a prescriptive easement had been established.[20]

The defendants now claim that the court's finding that the railroad ties did not encroach on the plaintiff's property was clearly erroneous. They argue that certain evidence establishes unequivocally that the ties encroached, albeit not to the extent initially claimed at trial. In particular, the defendants point to a photograph that appears to show the railroad ties, at the northernmost end of the claimed area, directly abutting the side of the plaintiff's barn, and to testimony of the plaintiff's surveyor stating that the barn is situated 8.4 inches from, and parallel to, the common boundary. They assert, therefore, that the ties must have encroached 8.4 inches over the border, thus making the court's finding that the ties were not on the plaintiff's property clearly erroneous.

When the factual basis of a trial court's decision is challenged, our function is to determine whether, in light of the pleadings and evidence in the whole record, these findings of fact are clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Lydall, Inc.* v. *Ruschmeyer*, 282 Conn. 209, 221, 919 A.2d 421 (2007).

[20] The court, therefore, also rejected the defendants' claim that the plaintiff's fence was obstructing the alleged easement.

We have reviewed the evidence in the record and conclude that the court's finding was not clearly erroneous. To begin, the photograph identified by the defendants depicts only a portion of the entire length of the railroad tie border, and the tie whose location the defendants claim is unequivocally established by the photograph is at the northern terminus of the claimed prescriptive easement area. Even if we were to agree that this photograph, which was taken from a distance and was not directly focused on the area in question, definitively establishes, to the very inch, the location of the railroad tie border where it passes by the barn, it does nothing to prove the location of the remainder of the border. Put otherwise, a showing that the court's finding was erroneous to such a limited extent would not undermine the court's judgment that a prescriptive easement was unproven because it in no way establishes that the remaining portion of the border—the vast majority of it—was encroaching on the plaintiff's property.

The defendants also argue that the court's finding as to the location of the remainder of the railroad ties is erroneous given the nature of the evidence on which it is based. The court apparently credited the testimony of Robert Schulz that he built his driveway on his own property, that he built it in the same place that the former driveway had occupied, which he believed was on his own property, and that he did not intend to build it on the plaintiff's property. The defendants urge us to conclude that the court's reliance on Schulz' testimony was improper because Schulz conceded that he did not survey the border area prior to constructing the driveway and, therefore, did not know with certainty the precise location of the boundary. We decline the defendants' invitation, however, because the question of the credibility and weight to assign Schulz' testimony, in light of the circumstances cited, was one for the trier

of fact. "It is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we do not retry the facts or pass on the credibility of witnesses. . . . We afford great weight to the trial court's findings because of its function to weigh the evidence and determine credibility." (Internal quotation marks omitted.) *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 272 Conn. 14, 53, 861 A.2d 473 (2004).

Moreover, the countervailing evidence that the defendants argue must be reevaluated upon a remand suffers from the same claimed infirmity as the testimony of Robert Schulz. Specifically, the only other evidence as to the location of the remainder of the railroad ties was the testimony of Robert Muellner, who similarly failed to commission a survey while the ties were still present in order to establish their precise location. Given the dearth of objective evidence available to prove the historical fact at issue, we cannot fault the trial court for crediting the subjective recollections of Robert Schulz over the subjective recollections of Robert Muellner.[21] We note that it was the defendants' burden, as adverse claimants, to prove an encroachment, and not the plaintiff's burden, as counterclaim defendant, to disprove the same.

Because the court's finding has support in the record, it is not clearly erroneous. Accordingly, the defendants' third claim is unavailing.

## IV

The defendants' final claim is that the court applied the wrong burden of proof when evaluating their prescriptive easement claim. We do not agree.

---

[21] We observe that the court generally found Robert Muellner to be an unpersuasive witness; its memorandum of decision twice describes his testimony as not credible.

We first note the proper standard of review. "When a party contests the burden of proof applied by the trial court, the standard of review is de novo because the matter is a question of law." *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 455, 844 A.2d 836 (2004).

The defendants' argument is predicated on the court's use of imprecise terminology in its memorandum of decision. Specifically, in describing the defendants' claim that they had acquired the right to use a portion of the plaintiff's property as part of their driveway, the court stated that "[t]he defendants assert that . . . they have adversely possessed that portion of the [plaintiff's] property." As the defendants point out, claims of adverse possession and prescriptive easements, though requiring proof of similar elements, are nevertheless distinct causes of action. See *Schulz* v. *Syvertsen*, 219 Conn. 81, 92 n.8, 591 A.2d 804 (1991); cf. footnote 6 of this opinion. The proper inquiry in evaluating a claim that easement rights have been acquired by prescription is whether the claimant adversely *used* the property at issue and not whether he adversely *possessed* that property.[22] See *Schulz* v. *Syvertsen*, supra, 92 n.8. In addition, the two types of claims differ as to the burden of proof to be applied. Claims of adverse possession are evaluated under the heightened standard of clear and positive proof, whereas claims of prescriptive easements are assessed under the preponderance of the evidence standard. See id., 91–92. According to the defendants, because the court used the term "adverse possession" in describing their prescriptive easement claim, it necessarily held them to the higher burden of proof associated with adverse possession claims, even

---

[22] At the outset of the memorandum of decision, the court correctly identified the defendants' claim as one of a prescriptive easement. The court did not cite further to any law governing prescriptive easements because it rejected the defendants' claim summarily, given its factual finding that the Schulzes' driveway had not encroached on the plaintiff's property. See part III of this opinion.

though it did not state so explicitly. We are not persuaded.

Because the court did not state explicitly what burden of proof it was applying to the defendants' prescriptive easement claim, the defendants argue that we should infer from the court's use of inaccurate terminology that it applied an improper standard. This we will not do. Our appellate courts repeatedly have held that when a trial court's memorandum of decision in a civil case fails to state the burden of proof employed, they will assume that the court applied the usual civil standard of a fair preponderance of the evidence. See *State* v. *Davis*, 229 Conn. 285, 302, 641 A.2d 370 (1994); *In re Juvenile Appeal (83-AB)*, 189 Conn. 58, 59, 454 A.2d 271 (1983); *Heaven* v. *Timber Hill, LLC*, 96 Conn. App. 294, 302, 900 A.2d 560 (2006).

Furthermore, to the extent the court's decision was ambiguous, it was the defendants' duty, as appellants, to seek an articulation as to the burden of proof applied. "It is . . . the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter." (Internal quotation marks omitted.) *Grimm* v. *Grimm*, 276 Conn. 377, 388, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006); see also Practice Book §§ 61-10, 66-5. "[A]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Internal quotation marks omitted.) *Grimm* v. *Grimm*, supra, 389. For the foregoing reasons, the defendants' final claim fails.

The judgment is reversed with respect to the deeded right-of-way and the case is remanded to the trial court for further proceedings according to law; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.